1 | RAYMOND H. AVER – SBN 109577
LAW OFFICES OF RAYMOND H. AVER
2 | A Professional Corporation
10801 National Boulevard, Suite 100
3 | Los Angeles, California  90064
Telephone: (310) 571-3511
4 | email: ray@averlaw.com

5 | General Insolvency Counsel for
SHAPPHIRE RESOURCES, LLC
6 | Debtor and Debtor In Possession

7 |

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA [LOS ANGELES DIVISION]**

10 |

11 | **In re:**

12 | **SHAPPHIRE RESOURCES, LLC,**

13 |

14 | **Debtor.**

**Case No. 2:17-bk-15033-RK**

**Chapter 11**

**ORIGINAL DISCLOSURE STATEMENT
DESCRIBING "DEBTOR'S CHAPTER 11
PLAN"**

**Date: [To Be Scheduled]**
**Time:**
**Place: Courtroom 1675**
**Roybal Federal Building**
**United States Bankruptcy Court**
**255 East Temple Street**
**Los Angeles, California  90012**

15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

1

# TABLE OF CONTENTS

2  I. **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . 1
       A.  Purpose of This Document . . . . . . . . . . . . . . 2
3      B.  Deadlines for Voting and Objecting; Date of Plan
           Confirmation Hearing . . . . . . . . . . . . . . . 3
4          1.  Time and Place of the Confirmation
               Hearing . . . . . . . . . . . . . . . . . 3
5          2.  Deadline for Voting For or Against the
               Plan . . . . . . . . . . . . . . . . . . . 3
6          3.  Deadline for Objecting to the Confirmation
               of the Plan . . . . . . . . . . . . . . . 3
7          4.  Identity of Person to Contact for More
               Information Regarding the Plan . . . . . . 4
8      C.  Disclaimer . . . . . . . . . . . . . . . . . . . . 4

9
   II. **BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . 4
10     A.  Description and History of the Debtor's
           Business . . . . . . . . . . . . . . . . . . . . . 4
11     B.  Principals/Affiliates of Debtor's Business . . . . 7
       C.  Management of the Debtor Before and After the
12         Bankruptcy . . . . . . . . . . . . . . . . . . . . 7
       D.  Events Leading to Chapter 11 Filing . . . . . . . 7
13     E.  Significant Events During The Bankruptcy . . . . . 8
           1.  Bankruptcy Proceedings . . . . . . . . . . 8
14         2.  Other Legal Proceedings . . . . . . . . . 11
           3.  Actual and Projected Recovery of
15             Preferential or Fraudulent Transfers . . . 11
           4.  Procedures To Be Implemented to Resolve
16             Financial Problems . . . . . . . . . . . 12
           5.  Current and Historical Financial
17             Conditions . . . . . . . . . . . . . . . 12

18
   III. **SUMMARY OF THE PLAN OF REORGANIZATION** . . . . . . . . . 12
19     A.  What Creditors and Interest Holders Will Receive
           Under the Proposed Plan . . . . . . . . . . . . . 12
20     B.  Unclassified Claims . . . . . . . . . . . . . . . 13
           1.  Administrative Expenses . . . . . . . . . 13
21         2.  Priority Tax Claims . . . . . . . . . . . 14
       C.  Classified Claims and Interests . . . . . . . . . 17
22         1.  Classes of Secured Claims . . . . . . . . 17
           2.  Classes of Priority Unsecured Claims . . . 19
23         3.  Class of General Unsecured Claims . . . . . 19
           4.  Class(es) of Interest Holders . . . . . . 20
24     D.  Means of Effectuating the Plan . . . . . . . . . 20
           1.  Funding for the Plan . . . . . . . . . . . 20
25         2.  Post-Confirmation Management . . . . . . . 21
           3.  Disbursing Agent . . . . . . . . . . . . . 21
26     E.  Risk Factors . . . . . . . . . . . . . . . . . . 21
       F.  Other Provisions of the Plan . . . . . . . . . . 22
27         1.  Executory Contracts and Unexpired Leases . . 22
               a.  Assumptions . . . . . . . . . . . . 22
28             b.  Rejections . . . . . . . . . . . . . 22

    2.    Changes in Rates Subject to Regulatory
        Approval . . . . . . . . . . . . . . 23
    3.    Retention of Jurisdiction . . . . . . . . 23
 G.  Tax Consequences of Plan . . . . . . . . . . . 23

IV.  **CONFIRMATION REQUIREMENTS AND PROCEDURES** . . . . . . 25
 A.  Who May Vote or Object . . . . . . . . . . . . 25
    1.    Who May Object to Confirmation of the
        Plan . . . . . . . . . . . . . . . 25
    2.    Who May Vote to Accept/Reject the Plan . . . 25
        a.   What is an Allowed Claim/Interest . . 26
        b.   What Is an Impaired Claim/Interest . . 26
    3.    Who is Not Entitled to Vote . . . . . . . . 27
    4.    Who Can Vote in More Than One Class . . . . . 27
    5.    Votes Necessary to Confirm the Plan . . . . . 28
    6.    Votes Necessary for a Class to Accept the
        Plan . . . . . . . . . . . . . . . 28
    7.    Treatment of Nonaccepting Classes . . . . . 28
    8.    Request for Confirmation Despite Nonacceptance
        by Impaired Class(es) . . . . . . . . . . 29
 B.  Liquidation Analysis . . . . . . . . . . . . . 29
 C.  Feasibility . . . . . . . . . . . . . . . . . 32

V.  **EFFECT OF CONFIRMATION OF PLAN** . . . . . . . . . . 34
 A.  Discharge . . . . . . . . . . . . . . . . . 34
 B.  Revesting of Property in the Debtor . . . . . . . 34
 C.  Modification of Plan . . . . . . . . . . . . . 34
 D.  Post-Confirmation Status Report . . . . . . . . 34
 E.  Quarterly Fees . . . . . . . . . . . . . . . 35
 F.  Post-Confirmation Conversion/Dismissal . . . . . 35
 G.  Final Decree . . . . . . . . . . . . . . . . 35

VI.  **SUPPORTING DECLARATION** . . . . . . . . . . . . . 37

EXHIBIT A - LIST OF ALL ASSETS . . . . . . . . . 38
EXHIBIT B - FINANCIAL STATEMENTS. . . . . . . . . 39
EXHIBIT C - LEASES TO BE ASSUMED. . . . . . . . . 40
EXHIBIT D - LIST OF ADMINISTRATIVE EXPENSE CLAIMS . . . 41
EXHIBIT E - LIST OF UNSECURED CREDITORS . . . . . . . 42
EXHIBIT F - LIST OF EQUITY INTERESTS. . . . . . . . 57

*ORIGINAL DISCLOSURE STATEMENT*

# I.

## INTRODUCTION

Shapphire Resources, LLC ("Shapphire Resources," "Debtor," or "Proponent") is the debtor and debtor in possession in the above captioned chapter 11 bankruptcy case.  On April 24, 2017 ("Petition Date"), Shapphire Resources caused to be filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California [Los Angeles Division] ("Court").  Chapter 11 allows the debtor, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization ("Plan").  The Plan may provide for the debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  Shapphire Resources is the party proposing the Plan sent to you in the same envelope as this document.  THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

This is a reorganizing plan.  In other words, Shapphire Resources proposes to restructure its debts through the Plan and accomplish payments under the Plan with cash on hand in the debtor in possession account, rental income generated by those certain real properties located at 15920 Hayland Street, La Puente, California 91744 ("Hayland Street Property") and located at 2770 Cold Plains Drive, Hacienda Heights, California 91745 ("Cold Plains Drive Property") and initial and periodic capital contributions from Debtor's managing member, Susana Tubianosa ("Tubianosa"), or any other third party, to the extent necessary to enable Shapphire Resources to meet its obligations under the Plan.  The Effective Date of the proposed Plan is 45 days following entry of a final order

1  confirming the Plan.

2  **A.    Purpose of This Document**

3  This Disclosure Statement summarizes what is in the Plan, and

4  tells you certain information relating to the Plan and the process

5  the Court follows in determining whether or not to confirm the Plan.

6  **READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO**

7  **KNOW ABOUT:**

8  **(1)    WHO CAN VOTE OR OBJECT,**

9  **(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim**

10  **will receive if the Plan is confirmed), AND HOW THIS**

11  **TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN**

12  **LIQUIDATION,**

13  **(3)    THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE**

14  **BANKRUPTCY,**

15  **(4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT**

16  **TO CONFIRM THE PLAN,**

17  **(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND**

18  **(6)    WHETHER THIS PLAN IS FEASIBLE.**

19  This "Original Disclosure Statement Describing 'Debtor's Chapter

20  11 Plan'" ("Disclosure Statement") cannot tell you everything about

21  your rights.  You should consider consulting your own lawyer to

22  obtain more specific advice on how this Plan will affect you and what

23  is the best course of action for you.

24  Be sure to read the Plan as well as the Disclosure Statement.

25  If there are any inconsistencies between the Plan and the Disclosure

26  Statement, the Plan provisions will govern.

27  The Code requires a disclosure statement to contain "adequate

28  information" concerning the Plan.  The Court has approved this

1  document as an adequate Disclosure Statement, containing enough

2  information to enable parties affected by the Plan to make an

3  informed judgment about the Plan.  Any party can now solicit votes

4  for or against the Plan.

5  **B.   Deadlines for Voting and Objecting; Date of Plan Confirmation**

6  **Hearing**

7      THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS

8  DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT

9  YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE

10  PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL

11  CREDITORS AND INTEREST HOLDERS IN THIS CASE.

12      **1.   Time and Place of the Confirmation Hearing**

13      The hearing where the Court will determine whether or not to

14  confirm the Plan will take place on _____ ___, 2019, at ____

15  a.m./p.m., in Courtroom 1675, United States Bankruptcy Court, 255

16  East Temple Street, Los Angeles, California  90012.

17      **2.   Deadline For Voting For or Against the Plan**

18      If you are entitled to vote, it is in your best interest to

19  timely vote on the enclosed ballot and return the ballot in the

20  enclosed envelope to:

21      Law Offices Of Raymond H. Aver, APC
        10801 National Boulevard, Suite 100
22      Los Angeles, California  90064
        Attn: Raymond H. Aver, Esquire
23

24      Your ballot must be received by _____ ___, 2019, or it

25  will not be counted.

26      **3.   Deadline For Objecting to the Confirmation of the Plan**

27      Objections to the confirmation of the Plan must be filed with

28  the Court and served upon:

1   Law Offices Of Raymond H. Aver, APC
    10801 National Boulevard, Suite 100
2   Los Angeles, California 90064
    Attn: Raymond H. Aver, Esquire
3

4   by regular mail, or email by _____ ___, 2019.

5       **4.    Identity of Person to Contact for More Information**

6           **Regarding the Plan**

7       Any interested party desiring further information about the Plan

8   should contact:

9   Law Offices Of Raymond H. Aver, APC
    10801 National Boulevard, Suite 100
10  Los Angeles, California 90064
    Attn: Raymond H. Aver, Esquire
11  Telephone: (310) 571-3511

12  **C.   Disclaimer**

13      The financial data and information relied upon in formulating

14  the Plan is based on Shapphire Resources' financial records and

15  information, and was provided by Tubianosa, Shapphire Resources'

16  managing member.   Proponent represents that everything stated in the

17  Disclosure Statement is true to Proponent's best knowledge.   The

18  Court has not yet determined whether or not the Plan is confirmable

19  and makes no recommendation as to whether or not you should support

20  or oppose the Plan.

21

22                          **II.**

23                      **BACKGROUND**

24  **A.   Description and History of Debtor's Businesses**

25      Shapphire Resources is a Utah limited liability company.

26  Shapphire Resources is involved in the business of leasing real

27  estate.   Shapphire Resources' primary assets include the Hayland

28  Street Property and the Cold Plains Drive Property.

1    <u>Primary Real Property Assets Of Estate As Of The Petition Date:</u>

2    <u>Hayland Street Property</u>

3         The estimated fair market value of the Hayland Street Property

4    is $485,000.00, which value is being utilized for purposes of the

5    Disclosure Statement and the Plan.[1]    The Hayland Street Property is

6    encumbered by the first priority trust deed lien in favor of U.S.

7    Bank, National Association as Legal Title Trustee for Truman 2016 SC6

8    Title Trust ("U.S. Bank" or "Hayland First Trust Deed Lienholder") in

9    the amount of $772,719.89[2] as of the Petition Date, according to the

10   "Proof Of Claim" [Claim No. 4], filed on behalf of the Hayland First

11   Trust Deed Lienholder on June 15, 2017.    There are no delinquent

12   property taxes assessed against the Hayland Street Property.[3]

13        Shapphire Resources leases the Hayland Street Property to

14   United Care Homes, Inc. ("UCH"), a corporation that works closely

15   with the State of California Department of Health ("Department Of

16

17        [1]    This valuation was provided by James E. Gillis, a state licensed
     "Certified Real Estate Appraiser," hired by the lender.

18
          [2]    On or about June 22, 2007, a "Fixed Rate Mortgage Note" in the principal
19   amount of $417,000.00 ("417K Note") was executed by Tubianosa in favor of World
     Savings Bank, FSB, the predecessor in interest to the Hayland First Trust Deed
20   Lienholder.    A "Deed Of Trust," securing the 417K Note, was recorded with the Los
     Angeles County Registrar-Recorder/County Clerk on July 2, 2007, as Instrument No.
21   2007157522.    On or about February 11, 2013, the Hayland Street Property was
     transferred from Tubianosa to Shapphire Resources.    A "Grant Deed," evidencing
22   such transfer, was recorded with the Los Angeles County Registrar-Recorder/County
     Clerk on February 15, 2013, as Instrument No. 20130242367.

23        [3]    On May 9, 2017, the Los Angeles County Treasurer And Tax Collector
     ("LACTTC") caused to be filed a "Proof Of Claim" [Claim No. 1] ("LACTTC Proof Of
24   Claim"), asserting a secured claim for the 2017-2018 property taxes assessed
     against the Hayland Street Property and the Cold Plains Drive Property in the
25   estimated aggregate amount of $12,572.30.    The LACTTC Proof Of Claim further
     states that "[t]he amount of taxes is to be determined.    An Amended claim will be
26   filed once the exact dollar amount is available."    As discussed in more detail
     below, during pendency of this bankruptcy case, Shapphire Resources and the holder
     of the first priority trust deed liens against the Hayland Street Property and the
27   Cold Plains Drive Property entered into cash collateral/adequate protection
     stipulations [Docket ##52 and 74] providing that such lender is responsible for
28   the payment of all property taxes while the terms of the adequate protection
     stipulations are in effect.

1    Health") to provide housing and meet other needs of mentally disabled

2    individuals.    Shapphire Resources currently generates $2,500.00 in

3    monthly rent from the Hayland Street Property.

4

5        Cold Plains Drive Property

6        The estimated fair market value of the Cold Plains Drive

7    Property is $721,000.00, which value is being utilized for purposes

8    of the Disclosure Statement and the Plan.[4]    The Cold Plains Drive

9    Property is encumbered by the first priority trust deed lien in favor

10   of Wells Fargo Bank, N.A. ("Cold Plains First Trust Deed Lienholder")

11   in the amount of $1,207,182.35[5] as of the Petition Date, according to

12   the [Amended] "Proof Of Claim" [Claim No. 5], filed on behalf of the

13   Cold Plains First Trust Deed Lienholder on November 8, 2017.    There

14   are no delinquent property taxes assessed against the Cold Plains

15   Drive Property.[6]

16       The Cold Plains Drive Property was the subject of an adversary

17   proceeding before the Court, *Shapphire Resources, LLC v. Tambingon,*

18   Adversary No. 2:12-ap-02532-RK, to obtain possession of the Cold

19   Plains Drive Property that was successfully prosecuted and resulted

20   in a judgment in favor of Shapphire Resources and the eventual return

21   of possession of the Cold Plains Drive Property to Shapphire

22

23       [4]   *See*, footnote 1, *supra.*

24       [5]   On or about July 12, 2007, a "Fixed Rate Mortgage Note" in the principal
     amount of $615,000.00 ("615K Note") was executed by Tubianosa in favor of World
25   Savings Bank, FSB, the predecessor in interest to the Cold Plains First Trust Deed
     Lienholder.    A "Deed Of Trust," securing the 615K Note, was recorded with the Los
26   Angeles County Registrar-Recorder/County Clerk on July 20, 2007, as Instrument No.
     20071720668.    On or about August 8, 2008, the Cold Plains Drive Property was
     transferred from Tubianosa to Shapphire Resources.    A "Grant Deed," evidencing
27   such transfer, was recorded with the Los Angeles County Registrar-Recorder/County
     Clerk on August 20, 2008, as Instrument No. 200815-1798.

28       [6]   *See*, footnote 2, *supra.*

1  Resources.   Upon obtaining possession of the Cold Plains Drive
2  Property, Shapphire Resources embarked upon and has completed the
3  necessary renovations to the Cold Plains Drive Property in an effort
4  to qualify the property for licensing as an ICF-DDN ("Intermediate
5  Care Facility - Developmentally Disabled Nursing").

6      The New Provider Training course for the Cold Plains Drive
7  Property was completed, and the certificate of completion has been
8  received from the Department Of Developmental Services.  A Department
9  of Developmental Services walk thru for final certification and
10  licensing of the Cold Plains Drive Property Program was subsequently
11  completed and the Cold Plains Drive Property Program has been
12  approved.   Shapphire Resources thereafter entered into a lease with
13  UCH.   Shapphire Resources currently generates $3,500.00 in monthly
14  rent from the Cold Plains Drive Property.

15  **B.    Principals/Affiliates of Debtor's Business**

16      Tubianosa is a sole owner and manager of Shapphire Resources.
17  There are no affiliates of Shapphire Resources.

18  **C.    Management of the Debtor Before and After the Bankruptcy**

19      Tubianosa has continued to manage Shapphire Resources from its
20  inception to the present.

21  **D.    Events Leading to Chapter 11 Filing**

22      The following is a brief summary of some of the circumstances
23  that led to the filing of this chapter 11 case: there are several
24  precipitating factors leading to the Shapphire Resources' bankruptcy,
25  including a scheduled foreclosure sale initialed by one of the
26  lenders, difficulties in refinancing its mortgages, and the
27  government budget crisis.

28  ///

Law Offices
of Raymond
H. Aver, APC

*ORIGINAL DISCLOSURE STATEMENT*

**E.    Significant Events During the Bankruptcy**

**1.    Bankruptcy Proceedings**

The following is a chronological list of significant events which have occurred <u>during</u> this case:

- On April 24, 2017, Shapphire Resources caused to be filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code.

- On May 8, 2017, Shapphire Resources caused to be filed its Schedules, Statement of Financial Affairs and related chapter 11 forms.

- On May 26, 2017, Shapphire Resources caused to be filed the following: (a) an "Application By Debtor And Debtor In Possession To Employ Law Offices Of Raymond H. Aver, A Professional Corporation, As General Insolvency Counsel" ("Employment Application"); and (b) a "Notice Of Application By Debtor And Debtor In Possession To Employ Law Offices Of Raymond H. Aver, A Professional Corporation As General Insolvency Counsel."  On June 23, 2017, the Court issued an order approving the Employment Application and authorizing Shapphire Resources to employ the Law Offices of Raymond H. Aver, A Professional Corporation ("Aver Firm") as its general insolvency counsel.

- On June 9, 2017, the Hayland First Trust Deed Lienholder caused to be filed a "Motion For Relief From The Automatic Stay Under 11 U.S.C. §362 (With Supporting Declarations) (Real Property)" ("Hayland Stay Relief Motion").  On June 28, 2017, Shapphire Resources caused to be filed its opposition to the Hayland Stay Relief Motion together with

1      a supporting declaration of Susana Tubianosa.  The hearing

2      of the Hayland Stay Relief Motion, originally scheduled for

3      July 11, 2017, was continued by the Court on several

4      occasions to afford the Hayland First Trust Deed Lienholder

5      and Shapphire Resources sufficient time to negotiate an

6      adequate protection stipulation.

7   •  On June 14, 2017, Shapphire Resources caused to be filed

8      and served a "Notice Of Claims Deadline."

9   •  On June 19, 2017, the Court issued an "Order Fixing Bar

10     Date For The Filing Of Proofs Of Claim," according to

11     which, August 25, 2017, was scheduled as the deadline for

12     creditors and other parties in interest to file their

13     proofs of claim.

14  •  On September 25, 2017, the Hayland First Trust Deed

15     Lienholder and Shapphire Resources entered into a

16     "Stipulation Authorizing The Use Of Cash Collateral &

17     Adequate Protection" ("Hayland Cash Collateral/Adequate

18     Protection Stipulation").  On September 26, 2017, the Court

19     issued an order approving the Hayland Cash

20     Collateral/Adequate Protection Stipulation.  The Hayland

21     Cash Collateral/Adequate Protection Stipulation provides in

22     pertinent part:

23     [A]dequate Protection Payments to Creditor. Debtor has
       agreed to pay Creditor the amount of $2,340.63 per month
24     ($2,028.93 and $311.71 escrow for property taxes) as
       adequate protection ... [which adequate protection payment]
25     shall commence retroactively from May 10, 2017, and shall
       continue on the tenth (10th) day of each month thereafter
26     until a Termination Event, or the parties enter into a
       subsequent stipulation concerning the treatment of
27     Creditor's claim...

28

1

2

3

        <u>Property Taxes and Insurance</u>.  Creditor agrees to timely
pay any and all real property taxes for the Subject
Property when due since ... [the monthly adequate
protection payment] includes a monthly allocation of the
same...

4

5

6

        <u>Segregated Account; Use Limitation; Operating Reports</u>.
Debtor has opened and is depositing all Cash Collateral
from the Subject Property into a segregated Cash Collateral
Account.

7       •  On October 11, 2017, the Cold Plains First Trust Deed

8          Lienholder caused to be filed a "Motion For Relief From The

9          Automatic Stay Under 11 U.S.C. §362 (With Supporting

10         Declarations) (Real Property)" ("Cold Plains Stay Relief

11         Motion").  The hearing of the Cold Plains Stay Relief

12         Motion, originally scheduled for November 7, 2017, was

13         continued by the Court on several occasions to afford the

14         Cold Plains First Trust Deed Lienholder and Shapphire

15         Resources sufficient time to negotiate an adequate

16         protection stipulation.

17       •  On January 12, 2018, the Cold Plains First Trust Deed

18         Lienholder and Shapphire Resources entered into a

19         "Stipulation Authorizing The Use Of Cash Collateral &

20         Adequate Protection" ("Cold Plains Cash Collateral/Adequate

21         Protection Stipulation").  On January 16, 2018, the Court

22         issued an order approving the Cold Plains Cash

23         Collateral/Adequate Protection Stipulation.  The Cold

24         Plains Cash Collateral/Adequate Protection Stipulation

25         provides in pertinent part:

26 ///

27 ///

28 ///

[A]dequate Protection Payments to Creditor. Debtor has agreed to pay Creditor the amount of $3,341.64 per month ($2,663.60 and $678.04 escrow for property taxes only) as adequate protection ... [which adequate protection payment] shall commence December 10, 2017, and shall continue on the tenth (10ᵗʰ) day of each month thereafter until a Termination Event, or the parties enter into a subsequent stipulation concerning the treatment of Creditor's claim...

Property Taxes and Insurance. Creditor agrees to timely pay any and all real property taxes for the Subject Property when due since ... [the monthly adequate protection payment] includes a monthly allocation of the same ... Further because Creditor is responsible for paying property taxes hereunder, Debtor must cure the post-petition shortage for property taxes that Creditor has paid for the first installment of the 2017-2018 property taxes since the filing of Debtor's Bankruptcy Case in the amount of $4,746.28, which represents the escrow portion of the AP Payment 2017 referenced in paragraph 5 above for May 10, 2017 through November 10, 2017. The Property Tax reimbursement payment, made payable to Creditor, and shall be due and sent to Creditor's counsel within 3 business days of entry of an order approving this Stipulation.

Segregated Account; Use Limitation; Operating Reports. Debtor has opened and is depositing all Cash Collateral from the Subject Property into a segregated Cash Collateral Account.

- On June 23, 2017, the Court approved the employment of the Aver Firm as general insolvency counsel, with such employment being effective as of April 24, 2017.

There are no significant adversary proceedings or motions pending at the present time, except for those referenced above.

**2.   Other Legal Proceedings**

Shapphire Resources is not currently actively involved in any nonbankruptcy legal proceedings.

**3.   Actual and Projected Recovery of Preferential or**

**Fraudulent Transfers**

Shapphire Resources has reviewed its books and records, and it does not appear that any fraudulent or preferential transfers were made by Shapphire Resources; therefore, there will not be any

1  recovery of any fraudulent or preferential transfers.

2  **4. Procedures To Be Implemented to Resolve Financial Problems**

3  Under the reorganization being proposed by Shapphire Resources,

4  it will undertake the following in an effort to resolve its financial

5  problems:

6  • Tubianosa has agreed to make an initial capital

7  contribution of $50,000.00 and periodic capital

8  contributions to Shapphire Resources to the extent

9  necessary for Shapphire Resources to fund the Plan;

10  • Upon obtaining possession of the Cold Plains Drive

11  Property, Shapphire Resources completed the necessary

12  renovations, obtained approval from the Department of

13  Health and entered into a lease agreement with UCH.

14  Shapphire Resources currently generates $3,500.00 in

15  monthly rent from the Cold Plains Drive Property.

16  • Shapphire Resources, through the Aver Firm, continues

17  negotiating with the Hayland First Trust Deed Lienholder

18  and the Cold Plains First Trust Deed Lienholder regarding

19  consensual resolution of their claims.

20  **5. Current and Historical Financial Conditions**

21  The identity and fair market value of the estate's assets, as of

22  the Petition Date, are listed in **Exhibit A.** See also the Debtor's

23  financial history set forth in **Exhibit B.**

24  ///

25

26

27

28

# III.

## SUMMARY OF THE PLAN OF REORGANIZATION

**A.    What Creditors and Interest Holders Will Receive Under The Proposed Plan**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

**B.    Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified.  They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, Proponent has <u>not</u> placed the following claims in a class.

**1.    Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering Debtor's chapter 11 case which are allowed under Code section 507(a)(2).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of Debtor's §507(a)(2) administrative claims and their treatment under the Plan (*see*, **Exhibit D** for information about each administrative expense claim):

Law Offices
of Raymond
H. Aver, APC

| NAME | AMOUNT OWED | TREATMENT |
|------|-------------|-----------|
| Aver Firm – Debtor's general insolvency counsel | $50,000.00 (est.) This balance is net of the retainer and post petition payments. | Paid in full on the Effective Date (unless the claimant has agreed to be paid later or the Court has not yet ruled on the claim) |
| United States Trustee ("OUST") | $ 0.00 | Paid in full on the Effective Date |
| Court Clerk | $ 0.00 | Paid in full on the Effective Date |
| | TOTAL $50,000.00 (est.) | |

Court Approval of Fees Required:

The Court must rule on all fees listed in this chart before the fees will be owed.  For all fees except for the Clerk's Office fees and the OUST's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application.  Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

As indicated above, Shapphire Resources will need to pay approximately $50,000.00 worth of administrative claims on the Effective Date of the Plan unless the claimant has agreed to be paid later or the Court has not yet ruled on the claim.  As indicated elsewhere in this Disclosure Statement, Shapphire Resources will have a sufficient amount of cash on hand on the Effective Date of the Plan to pay all administrative claims in full.  The source of this cash will be from cash currently on hand in its debtor in possession accounts and a "new value" contribution from Tubianosa.

**2.    Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  Payment of priority tax claims in full within 5 years of the order for relief and on

1  terms not less favorable than those accorded the most favored non-

2  priority creditor is required by §1129(a)(9)(C).

3       The following chart lists <u>all</u> of Debtor's Section 507(a)(8)

4  priority tax claims and their treatment under the Plan:

| DESCRIPTION | AMOUNT OWED | TREATMENT |
|---|---|---|
| Name = Franchise Tax Board ("FTB")<br><br>Type of tax = Partnership<br><br>Total amount of allowed claim as of April 24, 2017 = $800.00<br><br>Taxable period = 2017<br><br>Payment interval = Monthly<br><br>Payment amount = $23.98<br><br>Beginning date = First (1st) day of the first (1st) full month after the Effective Date<br><br>Ending date = First (1st) day of the 36th full month after the Effective Date, but not later than five (5) years after the Petition Date<br><br>Interest rate = 5.0%<br><br>Total yearly payments = $287.76<br><br>Total payout amount = $863.28 | $800.00<br><br>[See, POC#3] | The allowed priority tax claim of the FTB estimated at $800.00 will be paid in full, including interest and penalties, in equal monthly payments of $23.98 each over a 36-month period, commencing on the first (1st) day of the first (1st) full month after the Effective Date and not to exceed five (5) years after the order for relief date. |

///

| | | |
|---|---|---|
| Name = Internal Revenue Service ("IRS")<br><br>Date of order for relief = April 24, 2017<br><br>Total amount of allowed claim as of April 24, 2017 = $8,287.40<br><br>Type of tax = WT-FICA/Partnership<br><br>Taxable period = 2013 through 2017<br><br>Payment interval = Monthly<br><br>Payment amount = $248.38<br><br>Beginning date = First (1st) day of the first (1st) full month after the Effective Date<br><br>Ending date = First (1st) day of the 36th full month after the Effective Date, but not later than 5 years after the Petition Date<br><br>Interest rate = 5.0%<br><br>Total yearly payments = $2,980.56<br><br>Total payout amount = $8,941.68 | $8,287.40<br><br>[See, POC #2] | Unless an amended "Proof Of Claim" is filed on behalf of the IRS providing for a different amount of the allowed priority tax claim, or an objection to claim is successfully prosecuted, the allowed priority tax claim of the IRS estimated at $8,287.40,[7] including interest and penalties, and will be paid in full in thirty-six (36) equal monthly payments of approximately $248.38 each at the rate that is in effect as of the Effective Date (currently 5.0% per annum), commencing on the first day of the first full month after the Effective Date. The repayment period will not exceed 5 years after the order for relief date. Notwithstanding anything to the contrary in the plan or in the order confirming the plan, the IRS shall not be required to file a request for payment of an expense described in Bankruptcy Code §503(b)(1)(B) or (C) as a condition of its being allowed administrative expenses, and Debtor shall pay in full all such administrative tax expenses, including interest and penalties thereon, when due. Further, any such administrative tax expenses shall not be discharged should the Court grant a discharge. |

---

[7]   On May 12, 2017, the IRS caused to be filed a "Proof Of Claim" [Claim No. 2], asserting an "unassessed-no return" priority claim in the amount of $8,287.40 for tax years 2013 through 2017. Shapphire Resources is currently in the process of preparing and filing its tax returns. It is, therefore, anticipated that the IRS' priority claim will be adjusted/amended once the referenced tax returns have been processed by the IRS. Accordingly, the treatment of the IRS' priority claim set forth above is subject to change.

## C.    Classified Claims and Interests

### 1.    Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate.   The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan:

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured claim of:<br><br>• LACTTC<br><br>• Collateral = Hayland Street Property and Cold Plains Drive Property<br><br>• Collateral value = $1,206,000.00<br><br>• Priority of security interest = First<br><br>• Total claim amount = $12,573.30 (as of the Petition Date) [See, POC #1][8] | N | Unimpaired<br><br>(Claims in this class are not entitled to vote on the Plan) | During the pendency of this bankruptcy case, Shapphire Resources and the holder of the first priority trust deed liens against the Hayland Street Property and the Cold Plains Drive Property entered into cash collateral/adequate protection stipulations [Docket ##52 and 74] providing that the Hayland First Trust Deed Lienholder and the Cold Plains First Trust Deed Lienholder are responsible for the payment of all property taxes "when due" until the Termination Event as this term is defined in the referenced cash collateral/adequate protection stipulations. Shapphire Resources believes that all property taxes have been paid, including the LACTTC Proof Of Claim, no deficiencies exist and therefore no payments will be made to the LACTTC under the Plan in connection with this claim. |

---

[8]   On May 9, 2017, the LACTTC caused to be filed the LACTTC Proof Of Claim, asserting a secured claim for the 2017-2018 property taxes assessed against the Hayland Street Property and the Cold Plains Drive Property in the estimated aggregate amount of $12,572.30.  The LACTTC Proof Of Claim further states that "[t]he amount of taxes is to be determined.  An Amended claim will be filed once the exact dollar amount is available."

| 2 | Secured claim of:<br><br>Name = Hayland First Trust Deed Lienholder<br><br>Collateral = Hayland Street Property<br><br>Collateral value = $485,000.00<br><br>Priority of security interest = Second<br><br>Total claim amount = $485,000.00<br><br>Interest rate = 4.75%<br><br>Amount of each installment = $2,529.99<br><br>Frequency of payments = monthly | N | Impaired<br><br>(Claims in this class are entitled to vote on the Plan) | The allowed claim of the Hayland First Trust Deed Lienholder will be bifurcated into a secured claim in the amount of $485,000.00 and an unsecured claim, if any. The secured portion of Class 2 claimant's allowed secured claim of $485,000.00 will be amortized over 30 years and paid, together with interest at the rate of 4.75% per annum, through equal monthly principal and interest payments in the amount of $2,529.99 each for the 360-month period, commencing on the first (1st) day of the first (1st) full month after the Effective Date. See Class 5 below, for the treatment to be provided to any unsecured portion of the claim of the Class 2 claimant. |
| 3 | Secured claim of:<br><br>Name = Cold Plains First Trust Deed Lienholder<br><br>Collateral = Cold Plains Drive Property<br><br>Collateral value = $721,000.00<br><br>Priority of security interest = Second<br><br>Total claim amount = $1,207,182.35<br><br>Interest rate = 4.75%<br><br>Amount of each installment = $3,761.08<br><br>Frequency of payments = monthly | N | Impaired<br><br>(Claims in this class are entitled to vote on the Plan) | The allowed claim of the Cold Plains First Trust Deed Lienholder will be bifurcated into a secured claim in the amount of $721,000.00 and an unsecured claim. The secured portion of the Class 3 claimant's allowed secured claim of $721,000.00 will be amortized over 30 years and paid, together with interest at the rate of 4.75% per annum, through equal monthly principal and interest payments in the amount of $3,761.08 each for the 360-month period, commencing on the first (1st) day of the first (1st) full month after the Effective Date. See Class 5 below, for the treatment to be provided to the unsecured portion of the claim of the Class 3 claimant. |

| 4 | Name = Best Options Limited Liability Co. ("Best Options")<br><br>Amount of secured claim = $12,500.00<br><br>Collateral = Personal property<br><br>Value of collateral = $12,500.00 | N | Unimpaired<br><br>(Claims in this class are not entitled to vote on the Plan) | Shapphire Resources will satisfy the allowed secured claim of the Class 4 claimant outside of the Plan pursuant to the terms of the underlying loan documents. |

## 2. Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Code Sections 507(a)(1), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

Shapphire Resources does not have any creditors whose claims are entitled to priority under Code Sections 507(a)(1), (a)(4), (a)(5), (a)(6), or (a)(7).

## 3. Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). The following chart identifies this Plan's treatment of the class containing all of Debtor's general unsecured claims (*See*, **Exhibit E** for information about each general unsecured claim):

///

///

///

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | General unsecured claims<br><br>• Total amount of allowed claims = $904,410.05 (est.), including unsecured portions of the claims of the Hayland First Trust Deed Lienholder and the Cold Plains First Trust Deed Lienholder. | Impaired<br><br>(Claims in this class are entitled to vote on the Plan) | General unsecured creditors will receive a dividend of 20% of their allowed claims, paid in ninety (90) equal quarterly installments of $1,507.35 each, commencing on the first (1st) day of the first (1st) calendar quarter after the Effective Date. |

## 4.   Class(es) of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the debtor.  If the debtor is a corporation, entities holding preferred or common stock in the debtor are interest holders.  If the debtor is a partnership, the interest holders include both general and limited partners.  If the debtor is an individual, the debtor is the interest holder. The following chart identifies the Plan's treatment of the class of interest holders (See, **Exhibit F** for information about each interest holder):

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 6 | Interest holder | Impaired<br><br>(Claims in this class are entitled to vote on the Plan) | Tubianosa shall retain her 100% membership interest in Shapphire Resources. |

## D.   Means of Effectuating the Plan

### 1.   Funding for the Plan

The Plan will be funded by the following: (a) cash on hand ($109,481.17 as December 31, 2018); (b) rental income generated by the Hayland Street Property ($2,500.00 per month); (c) rental income generated by the Cold Plains Drive Property ($3,500.00 per month);

(d) an initial capital contribution in the amount of $50,000.00 from Tubianosa, and periodic contributions from Tubianosa or any other third party to the extent necessary to enable Shapphire Resources to meet its obligations under the Plan.

**2.    Post-Confirmation Management**

There will be no change in management.  Tubianosa will continue to manage Shapphire Resources' financial affairs.

**3.    Disbursing Agent**

Tubianosa shall act as the disbursing agent for the purpose of making all distributions under the Plan.  The disbursing agent shall serve without bond and shall receive no fee of for distribution services rendered and expenses incurred pursuant to the Plan.

**E.    Risk Factors**

The proposed Plan has the following risks: (a) Shapphire Resources may not be able to generate sufficient rental income to meet its obligations under the Plan; (b) the financial information disclosed in the Disclosure Statement has not been audited and is based on an analysis of data available at the time of the preparation of the Disclosure Statement and Plan; (c) the Disclosure Statement describes certain significant tax consequences that may affect Debtor and others and, therefore, such parties are urged to consult with their own tax advisors regarding the federal, state, local and other tax consequences of the Plan; (d) although Shapphire Resources believes that the Plan complies with all applicable standards of the Bankruptcy Code, Shapphire Resources can provide no assurance that the Court will find that the Plan complies with section 1129 of the Bankruptcy Code or that the Court will confirm the Plan; (e)

1  Shapphire Resources may be required to request confirmation of the
2  Plan without the acceptance of all impaired classes entitled to vote
3  in accordance with section 1129(b) of the Bankruptcy Code; and (f)
4  any delays of either confirmation or the Effective Date of the Plan
5  could result in, among other things, increased claims of
6  professionals.

7

8  **F.    Other Provisions of the Plan**

9      **1.    Executory Contracts and Unexpired Leases**

10     **a.    Assumptions/Rejections**

11     The Plan provides for the assumption of all leases with the
12  tenant(s) of the Hayland Street Property and the Cold Plains Drive
13  Property that are unexpired as of the Effective Date.  If you are a
14  party to lease or contract to be assumed and you object to the
15  assumption of your lease or contract, you must file and serve your
16  objection to the Plan within the deadline for objecting to the
17  confirmation of the Plan.

18     **b. Rejections**

19     On the Effective Date, the following executory contracts and
20  unexpired leases will be rejected: **None**

21     The order confirming the Plan shall constitute an Order
22  approving the rejection of the lease or contract.  If you are a party
23  to a contract or lease to be rejected and you object to the rejection
24  of your contract or lease, you must file and serve your objection to
25  the Plan within the deadline for objecting to the confirmation of the
26  Plan.

27     THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON CLAIM ARISING
28  FROM THE REJECTION OF A LEASE OR CONTRACT HAS YET TO BE SCHEDULED BY

THE COURT.  Any claim based on the rejection of a contract will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

**2.    Changes in Rates Subject to Regulatory Commission Approval**

Shapphire Resources *is not* subject to governmental regulatory commission approval of its rates.  Therefore, compliance with Bankruptcy Code section 1129(a)(6) is not required.

**3.    Retention of Jurisdiction.**

The Court will retain jurisdiction to the extent provided by law.

**G.    Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.  The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the debtor.  The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are the tax consequences which the Plan may have on holders of claims: any recovery on a claim by a claim holder generally will be treated as payment of the debt underlying the claim to the extent of either the cash received by the holder in respect of the debt claim.  A recovery on a debt claim that represents a payment of principal on this debt claim generally is not taxable.  A claim

Law Offices
of Raymond
H. Aver, APC

1  holder may recognize a loss deduction to the extent that the value of
2  its recovery is less than the claim holder's adjusted tax basis in
3  its claim as of the Effective Date.  A claim holder generally will be
4  required to recognize ordinary income on the recovery of its claim to
5  the extent that the amount of the recovery represents interest (or
6  "original issue discount" ("OID") or "market discount") accrued in
7  respect of the debt claim.  Pursuant to the Plan, distributions
8  received in respect of claims will be allocated first to the
9  principal amount of such claims, with any excess allocated to any
10 accrued but unpaid interest (or OID).  However, there is no assurance
11 that the IRS will respect such allocation for federal income tax
12 purposes.  The character of any gain or loss recognized by a holder
13 of a claim as capital gain or loss or as ordinary income or loss will
14 be determined by several factors, including the tax status of the
15 holder, the nature of the claim in such holder's hands, whether the
16 claim constitutes a capital asset in the hands of the holder, whether
17 the claim was purchased at a discount, and whether and to what extent
18 the holder has previously claimed a bad debt deduction with respect
19 to its claim.  A holder of a claim recognizing a loss as a result of
20 the Plan may be entitled to a bad debt deduction, either in the
21 taxable year of the Effective Date or a prior taxable year.  Any
22 capital gain or loss would be long-term gain or loss if the holder's
23 holding period for its claim was more than one (1) year on the
24 Effective Date.

25      The following are the tax consequences which the Plan may have
26 on interest holders: Shapphire Resources is a limited liability
27 company and therefore the tax consequences of this plan may "flow
28 through" to the member of Shapphire Resources (i.e., Tubianosa).

Law Offices
of Raymond
H. Aver, APC

# IV.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.  Proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a plan.  Some of the requirements include that the plan must be proposed in good faith, acceptance of the Plan, whether the plan pays creditors at least as much as creditors would receive in a chapter 7 liquidation, and whether the plan is feasible.  These requirements are not the only requirements for confirmation.

## A.   Who May Vote or Object

### 1.   Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the plan, but as explained below not everyone is entitled to vote to accept or reject the plan.

### 2.   Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

///

1    **a.    What Is an Allowed Claim/Interest**

2        As noted above, a creditor or interest holder must first have an
3    allowed claim or interest to have the right to vote.  Generally, any
4    proof of claim or interest will be allowed, unless a party in
5    interest brings a motion objecting to the claim.  When an objection
6    to a claim or interest is filed, the creditor or interest holder
7    holding the claim or interest cannot vote unless the Court, after
8    notice and hearing, either overrules the objection or allows the
9    claim or interest for voting purposes.

10        THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE was
11    August 25, 2017.  A creditor or interest holder may have an allowed
12    claim or interest even if a proof of claim or interest was not timely
13    filed.  A claim is deemed allowed if (1) it is scheduled on the
14    debtor's schedules and such claim is not scheduled as disputed,
15    contingent, or unliquidated, and (2) no party in interest has
16    objected to the claim.  An interest is deemed allowed if it is
17    scheduled and no party in interest has objected to the interest.
18    Consult **Exhibit D, Exhibit E** and **Exhibit F**, attached hereto, to see
19    how Proponent has characterized your claim or interest.

20            **b.    What Is an Impaired Claim/Interest**

21        As noted above, an allowed claim or interest only has the right
22    to vote if it is in a class that is impaired under the plan.  A class
23    is impaired if the plan alters the legal, equitable, or contractual
24    rights of the members of that class.  For example, a class comprised
25    of general unsecured claims is impaired if the Plan fails to pay the
26    members of that class 100% of what they are owed.

27        In this case, Proponent believes that Classes 2, 3 and 5 are
28    impaired and that holders of claims in those classes are therefore

1   entitled to vote to accept or reject the Plan.  Proponent believes
2   that Classes 1, 4 and 6 are unimpaired and that holders of claims in
3   those classes are not entitled to vote.  Parties who dispute
4   Proponent's characterization of their claim or interest as being
5   impaired or unimpaired may file an objection to the Plan contending
6   that Proponent has incorrectly characterized the class.

7        **3.   Who is Not Entitled to Vote**

8        The following four types of claims are not entitled to vote:  (1)
9   claims that have been disallowed; (2) claims in unimpaired classes;
10  (3) claims entitled to priority pursuant to Code sections 507(a)(2),
11  (a)(3), and (a)(8); and (4) claims in classes that do not receive or
12  retain any value under the Plan.  Claims in unimpaired classes are
13  not entitled to vote because such classes are deemed to have accepted
14  the Plan.  Claims entitled to priority pursuant to Code sections
15  507(a)(2), (a)(3), and (a)(7) are not entitled to vote because such
16  claims are not placed in classes and they are required to receive
17  certain treatment specified by the Code.  Claims in classes that do
18  not receive or retain any value under the Plan do not vote because
19  such classes are deemed to have rejected the Plan.  EVEN IF YOUR
20  CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO
21  OBJECT TO THE CONFIRMATION OF THE PLAN.

22       **4.   Who Can Vote in More Than One Class**

23       A creditor whose claim has been allowed in part as a secured
24  claim and in part as an unsecured claim is entitled to accept or
25  reject the plan in both capacities by casting one ballot for the
26  secured part of the claim and another ballot for the unsecured claim.
27  ///
28  ///

1    **5.    Votes Necessary to Confirm the Plan**

2    If impaired classes exist, the court cannot confirm the plan

3    unless (1) at least one impaired class has accepted the plan without

4    counting the votes of any insiders within that class, and (2) all

5    impaired classes have voted to accept the plan, unless the Plan is

6    eligible to be confirmed by "cramdown" on non-accepting classes, as

7    discussed later in Section IV(A)(8).

8    **6.    Votes Necessary for a Class to Accept the Plan**

9    A class of claims is considered to have accepted the plan

10   when more than one-half (½) in number and at least two-thirds (2/3)

11   in dollar amount of the claims which actually voted, voted in favor

12   of the plan.  A class of interests is considered to have accepted the

13   Plan when at least two-thirds (2/3) in amount of the interest-holders

14   of such class which actually voted, voted to accept the plan.

15   **7.    Treatment of Nonaccepting Classes**

16   As noted above, even if <u>all</u> impaired classes do not accept the

17   proposed plan, the court may nonetheless confirm the plan if the

18   nonaccepting classes are treated in the manner required by the Code.

19   The process by which nonaccepting classes are forced to be bound by

20   the terms of the Plan is commonly referred to as "cramdown."  The

21   Code allows the plan to be "crammed down" on nonaccepting classes of

22   claims or interests if it meets all consensual requirements except

23   the voting requirements of 1129(a)(8) and if the plan does not

24   "discriminate unfairly" and is "fair and equitable" toward each

25   impaired class that has not voted to accept the plan as referred to

26   in 11 U.S.C. § 1129(b) and applicable case law.

27   ///

28   ///

1  **8.    Request for Confirmation Despite Nonacceptance by**

2  **Impaired Class(es)**

3  The party proposing this Plan *will* ask <u>the Court</u> to confirm this

4  Plan by cramdown on impaired Classes 2, 3 and 5 if these classes do

5  not vote to accept the Plan.

6  Please note that the proposed Plan treatment described by this

7  Disclosure Statement cannot be crammed down on the following classes:

8  **None.**  AS A RESULT, IF ANY OF THESE CLASSES DOES <u>NOT</u> VOTE TO ACCEPT

9  THE PLAN, THE PLAN WILL <u>NOT</u> BE CONFIRMED.

10 **B.    Liquidation Analysis**

11 Another confirmation requirement is the "Best Interest Test",

12 which requires a liquidation analysis.  Under the Best Interest Test,

13 if a claimant or interest holder is in an impaired class and that

14 claimant or interest holder does not vote to accept the plan, then

15 that claimant or interest holder must receive or retain under the

16 plan property of a value not less than the amount that such holder

17 would receive or retain if the debtor were liquidated under Chapter 7

18 of the Bankruptcy Code.

19 In a chapter 7 case, the debtor's assets are usually sold by a

20 Chapter 7 trustee.  Secured creditors are paid first from the sales

21 proceeds of properties on which the secured creditor has a lien.

22 Administrative claims are paid next.  Next, unsecured creditors are

23 paid from any remaining sales proceeds, according to their rights to

24 priority.  Unsecured creditors with the same priority share in

25 proportion to the amount of their allowed claim in relationship to

26 the amount of total allowed unsecured claims.  Finally, interest

27 holders receive the balance that remains after all creditors are

28 paid, if any.

1    For the Court to be able to confirm this Plan, the Court must

2    find that all creditors and interest holders who do not accept the

3    Plan will receive at least as much under the Plan as such holders

4    would receive under a chapter 7 liquidation.  The Plan Proponent

5    maintains that this requirement is met here for the following

6    reasons:

7         •    In a chapter 7 case, a trustee is appointed and entitled to

8              compensation from the bankruptcy estate in an amount not to

9              exceed 25% of the first $5,000 of all moneys disbursed, 10%

10             on any amount over $5,000 but less than $50,000, 5% on any

11             amount over $50,000 but not in excess of $1 million, and 3%

12             on all amounts over $1 million.

13    Below is a demonstration, in balance sheet format, that all

14    creditors and interest holders will receive at least as much under

15    the Plan as such creditor or interest holder would receive under a

16    Chapter 7 liquidation.  (See **Exhibit A** for an explanation of how the

17    following assets are valued.)  This information is provided by

18    Shapphire Resources:

19    ///

20

21

22

23

24

25

26

27

28

**ASSETS AT LIQUIDATION VALUES:**

CURRENT ASSETS
a.   Cash on hand (in DIP accounts as of       $   109,481.17
12/31/2018)
b.   Accounts receivable                       $        0.00
c.   Inventories                               $        0.00
     TOTAL CURRENT ASSETS                      $   109,481.17

FIXED ASSETS
a.   Office furniture & equipment              $    12,500.00
b.   Machinery & equipment                     $         0.00
c.   Automobiles                               $         0.00
d.   Hayland Street Property   ($485K FMV)     $   455,900.00[9]
e.   Cold Plains Drive Property ($721K FMV)    $   677,740.00[10]
     TOTAL FIXED ASSETS                        $1,146,140.00

**TOTAL ASSETS AT LIQUIDATION VALUE**             $1,255,621.10

**Less:**
Secured creditor's recovery                    $1,992,402.24
**Less:**
Chapter 7 trustee fees and expenses            $    37,505.56
**Less:**
Chapter 7 trustee professional fees            $    10,000.00
**Less:**
Chapter 11 administrative expenses             $    50,000.00
**Less:**
Priority claims,
excluding administrative expense claims        $     9,087.40
**Less:**
(1) Balance for unsecured claims               $  (843,374.06)

(2) Total amt of unsecured claims              $   130,207.81

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS
WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION
= 0%**

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS
WILL RECEIVE OR RETAIN UNDER THIS PLAN = 20%**

---

[9]   The liquidation value of the Hayland Street Property of $455,900.00
includes the 6% cost of sale of the Hayland Street Property.

[10]   The liquidation value of the Cold Plains Drive Property of $677,740.00
includes the 6% cost of sale of the Cold Plains Drive Property.

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100% | 0% |
| Priority Tax Claims | 100% | 0% |
| Class 1 - LACTTC | 100% | 100% |
| Class 2 - Hayland First Trust Deed Lienholder | 100% | 100% |
| Class 3 - Cold Plains First Trust Deed Lienholder | 100% | 100% |
| Class 4 - Best Options | 100% | 100% |
| Class 5 - General Unsecured Creditors | 20% | 0% |
| Class 6 - Equity Security Holders | N/A | N/A |

## C.  Feasibility

Another requirement for confirmation involves the feasibility of the plan, which means that confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

There are at least two important aspects of a feasibility analysis.  The first aspect considers whether the debtor will have enough cash on hand on the Effective Date of the plan to pay all the claims and expenses which are entitled to be paid on such date. Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

Cash Debtor will have on hand by Effective Date      $    109,481.17

**To Pay:** Administrative claims                             —      50,000.00

**To Pay:** Statutory costs & charges                        —           0.00

**To Pay:** Other Plan Payments due on                       —           0.00
        Effective Date

Balance after paying these amounts .............   $     59,481.17

The sources of the cash Shapphire Resources will have on hand by the

Effective Date, as shown above are:

> $109,481.17      Cash on hand (DIP Accounts as of December
>                  31, 2018)
>
> $109,481.17      Total

The second aspect considers whether the Proponent will have

enough cash over the life of the Plan to make the required Plan

payments.

In summary, the Plan proposes to satisfy Class 1 (LACTTC) in

full; to pay Class 2 (Hayland First Trust Deed Lienholder) in full;

to pay Class 3 (Cold Plains First Trust Deed Lienholder) in full; to

pay Class 4 (Best Options) in full; to pay Class 5 (General Unsecured

Creditors) 20% dividend of the amounts of their allowed claims; and

to enable the Class 6 (Interest Holder) to retain her interest in

Shapphire Resources.

///

///

///

# V.

# EFFECT OF CONFIRMATION OF PLAN

## A.    Discharge

This Plan provides that upon completion of payments under the Plan, Shapphire Resources shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. §1141.  However, the discharge will not discharge any liability imposed by the Plan.

## B.    Revesting of Property in Debtor

Except as provided in Section V(E), below, and except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in Shapphire Resources.

## C.    Modification of Plan

Proponent of the Plan may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

## D.    Post-Confirmation Status Report

Within 120 days of the entry of the order confirming the Plan, the Plan Proponent shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served in accordance with the requirements of the Local Bankruptcy Rules and/or Court order. Further status reports shall be filed every 120 days and served on the same entities.

**E.   Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. §1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

**F.   Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court orders, the case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances.  The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

**G.   Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close

1   the case.

2

3   Dated:       February 4, 2019

4

5           __Shapphire Resources, LLC_____
          Name and Identity of Plan Proponent

6

7           _____
          Signature of the Representative of the Plan Proponent

8

9           __Susana Tubianosa, Manager_____
          Name of the Representative of the Plan Proponent

10

11          _____
          Signature of Attorney for Plan Proponent

12

13           __Raymond H. Aver, Esquire_____
          Name of Attorney for Plan Proponent

14

15           __Law Offices Of Raymond H. Aver, APC_____
          Name of Law Firm for Plan Proponent

16

17

18

19

20

21

22

23

24

25

26

27

28

# VI.

## SUPPORTING DECLARATION

I, SUSANA TUBIANOSA, declare:

1.   I am the manager of Shapphire Resources, LLC ("Shapphire Resources"), the debtor and debtor in possession in the chapter 11 case captioned *In re Shapphire Resources, LLC,* Case No. 2:17-bk-15033-RK.

2.   I have personal knowledge of the operations of Shapphire Resources' business and assets.

3.   I assisted in the preparation of the "Original Disclosure Statement Describing 'Debtor's Chapter 11 Plan'" ("Disclosure Statement").

4.   I have reviewed the Disclosure Statement and attest to the truthfulness and accuracy of the facts set forth therein to the best of my knowledge, information and belief.

5.   I make this declaration of my personal knowledge, except for those facts which I believe based on information and belief.  If called upon as a witness in this matter, I could and would testify competently to the foregoing.

Executed this 4th day of February 2019, at Los Angeles, California.  I declare under penalty of perjury that the foregoing is true and correct.

_____
SUSANA TUBIANOSA

**EXHIBIT A – LIST OF ALL ASSETS**

| | | |
|---|---|---|
| Cash on hand (in DIP accounts balance as of 12/31/18) | $ | 109,481.17 |
| Office furniture and equipment | $ | 12,500.00 |
| Hayland Street Property | $ | 485,000.00 |
| Cold Plains Drive Property | $ | 721,000.00 |
| | | $1,327,981.10 |

Law Offices
of Raymond
H. Aver, APC

1                      **EXHIBIT B - FINANCIAL STATEMENTS**

2

3  **Projected Cash Flow Statements**

4  **December 2018 Monthly Operating Report**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROJECTED INCOME AND EXPENSE STATEMENT**

|                                                       | Months 1-36 | Months 37-360 |
|-------------------------------------------------------|-------------|---------------|
| INCOME                                                |             |               |
| Hayland Property                                      | $2,500.00   | $2,500.00     |
| Cold Plains Property                                  | $3,500.00   | $3,500.00     |
| Cash on hand/new value contributions                  | $1,100.00   | $800.00       |
|                                                       | $7,100.00   | $6,800.00     |
|                                                       |             |               |
| CHAPTER 11 PLAN PAYMENTS                              |             |               |
| Wells Fargo Bank, N.A. - Cold Plains Drive Property   | $3,761.08   | $3,761.08     |
| Wells Fargo Bank, N.A. - Hayland Street Property      | $2,529.99   | $2,529.99     |
| IRS                                                   | $248.38     | $0.00         |
| FTB                                                   | $23.98      | $0.00         |
| Unsecured creditors                                   | $502.45     | $502.45       |
|                                                       | $7,065.88   | $6,793.52     |

UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
CENTRAL DISTRICT OF CALIFORNIA

| In Re:<br><br>**SHAPPHIRE RESOURCES, LLC,**<br><br>Debtor(s). | **CHAPTER 11 (BUSINESS)**<br><br>**Case Number:** 2:17-bk-15033-RK<br>**Operating Report Number:** 20<br>**For the Month Ending:** 12/31/2018 |
| --- | --- |

## I. CASH RECEIPTS AND DISBURSEMENTS
### A. (GENERAL ACCOUNT*)

1.  TOTAL RECEIPTS PER ALL PRIOR GENERAL ACCOUNT REPORTS — $117,518.53

2.  LESS: TOTAL DISBURSEMENTS PER ALL PRIOR GENERAL ACCOUNT REPORTS — $18,779.10

3.  BEGINNING BALANCE: — $98,739.43

4.  RECEIPTS DURING CURRENT PERIOD:
    Accounts Receivable - Post-filing _____
    Accounts Receivable - Pre-filing _____
    General Sales
    Other (Specify)    Deposits    $0.00
    **Other (Specify) _____

    TOTAL RECEIPTS THIS PERIOD: — $0.00

5.  BALANCE: — $98,739.43

6.  LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD
    Transfers to Other DIP Accounts (from page 2) _____
    Disbursements (from page 2)    $50.00

    TOTAL DISBURSEMENTS THIS PERIOD:*** — $50.00

7.  ENDING BALANCE: — $98,689.43

8.  General Account Number(s):    **General DIP Account***
                                   **Account No. ******6920**
    Depository Name & Location:    **Chino Commercial Bank, N.A.**
                                   **14245 Pipeline Avenue**
                                   **Chino, California 91710**

\* All receipts must be deposited into the general account.

\*\* Include receipts from the sale of any real or personal property out of the ordinary course of business; attach an exhibit specifying what was sold,
to whom, terms, and date of Court Order or Report of Sale.

\*\*\* This account was opened on or about May 10, 2017

Case 2:17-bk-15033-RK   Doc 120   Filed 01/15/19   Entered 01/15/19 15:08:47   Desc
Main Document      Page 2 of 29

TOTAL DISBURSEMENTS FROM GENERAL ACCOUNT FOR CURRENT PERIOD

| Date mm/dd/yyyy | Check Number | Payee or DIP account | Purpose | *Amount Transfered | **Amount Disbursed | Amount |
|---|---|---|---|---|---|---|
| 12/31/2018 | | Chino Commercial Bank | Bank Fee | | $50.00 | $50.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | | | | | $0.00 |
| | | ***TOTAL DISBURSEMENTS THIS PERIOD: | | 0.00 | $50.00 | $50.00 |

* Fill in amounts in this column if they are TRANSFERS to another DIP account (e.g. Payroll or Tax); the "amount" column will be filled in for you.
** Fill in amounts in this column if they are DISBURSEMENTS to outside payees; the "amount" column will be filled in for you.

GENERAL ACCOUNT
BANK RECONCILIATION***

Bank statement Date:  __12/31/2018__   Balance on Statement:  __$98,689.43__

Plus deposits in transit (a):

| Deposit Date | Deposit Amount |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

TOTAL DEPOSITS IN TRANSIT                               | 0.00 |

Less Outstanding Checks (a):

| Check Number | Check Date | Check Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

TOTAL OUTSTANDING CHECKS:                               | 0.00 |

Bank statement Adjustments:                             _____
Explanation of Adjustments-

ADJUSTED BANK BALANCE:                                  | $98,689.43 |

\* It is acceptable to replace this form with a similar form.
\*\* Please attach a detailed explanation of any bank statement adjustment.
\*\*\* A true and correct copy of the General DIP Account bank statement for the period from 12/1/2018 through
12/31/2018 is attached as **Exhibit A** hereto.

## I. CASH RECEIPTS AND DISBURSEMENTS
### B. (CASH COLLATERAL ACCOUNT - HAYLAND STREET)

| | |
|---|---:|
| 1. TOTAL RECEIPTS PER ALL PRIOR ACCOUNT REPORTS | $47,584.70 |
| 2. LESS: TOTAL DISBURSEMENTS PER ALL PRIOR ACCOUNT REPORTS | $40,965.71 |
| 3. BEGINNING BALANCE: | $6,618.99 |
| 4. RECEIPTS DURING CURRENT PERIOD (Rent): | $2,500.00 |
|     OTHER (Deposit): | $0.00 |
| 5. BALANCE: | $9,118.99 |
| 6. LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD TOTAL DISBURSEMENTS THIS PERIOD: | $4,831.30 |
| 7. ENDING BALANCE: | $4,287.69 |

8. Cash Collateral Account Number(s):

    Depository Name & Location:

**Cash Collateral Account (Hayland Street)\***
**Account No. \*\*\*\*\*\*6938**
**Chino Commercial Bank**
**14245 Pipeline Avenue**
**Chino, California 91710**

\* This account was opened on or about May 10, 2017

Case 2:17-bk-15033-RK    Doc 120    Filed 01/15/19    Entered 01/15/19 15:08:47    Desc
TOTAL DISBURSEMENTS FROM &IA D6cGBiAMTERAIeAGGOUNT FOR CURRENT PERIOD

| Date mm/dd/yyyy | Check Number | Payee | Purpose | Amount |
|---|---|---|---|---|
| 12/12/2018 | 1020 | Wells Fargo Bank | Adequate Protection Payment | $4,681.26 |
| 12/21/2018 | | Safeguard Check Supply | Account Checks | $100.04 |
| 12/31/2018 | | Chino Commercial Bank | Bank Fee | $50.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | TOTAL DISBURSEMENTS THIS PERIOD: | $4,831.30 |

Case 2:17-bk-15033-RK    Doc 120    Filed 01/15/19    Entered 01/15/19 15:08:47    Desc
CASH COLLATERAL ACCOUNT 29
Main Document       Page 6 of 29

BANK RECONCILIATION***

Bank statement Date:       __12/31/2018__  Balance on Statement:       __$4,287.69__

Plus deposits in transit (a):

| Deposit Date | Deposit Amount |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

TOTAL DEPOSITS IN TRANSIT                                           | 0.00 |

Less Outstanding Checks (a):

| Check Number | Check Date | Check Amount |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

TOTAL OUTSTANDING CHECKS:                                          | 0.00 |

Bank statement Adjustments:                                        _____
Explanation of Adjustments-

|  |
|---|

ADJUSTED BANK BALANCE:                                             | $4,287.69 |

* It is acceptable to replace this form with a similar form
** Please attach a detailed explanation of any bank statement adjustment
***A true and correct copy of the Cash Collateral DIP account bank statement for the period from 12/1/2018
through 12/31/2018 is attached as **Exhibit B** hereto.

Case 2:17-bk-15033-RK   Doc 120   Filed 01/15/19   Entered 01/15/19 15:08:47   Desc

I. CASH RECEIPTS AND DISBURSEMENTS

C. (CASH COLLATERAL ACCOUNT - COLD PLAINS DRIVE)

| | |
|---|---|
| 1. TOTAL RECEIPTS PER ALL PRIOR ACCOUNT REPORTS | $48,500.00 |
| 2. LESS:  TOTAL DISBURSEMENTS PER ALL PRIOR ACCOUNT REPORTS | $38,762.67 |
| 3. BEGINNING BALANCE: | $9,737.33 |
| 4. RECEIPTS DURING CURRENT PERIOD    (Rent): | $3,500.00 |
| (Deposit): | $0.00 |
| Total: | $3,500.00 |
| 5. BALANCE: | $13,237.33 |
| 6. LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD TOTAL DISBURSEMENTS THIS PERIOD:*** | $6,733.28 |
| 7. ENDING BALANCE: | $6,504.05 |

8. Cash Collateral Account Number(s):     **Cash Collateral Account (Cold Plains Drive)***

                                          **Account No. ******7316**
   Depository Name & Location:            **Chino Commercial Bank**
                                          **14245 Pipeline Avenue**
                                          **Chino, California 91710**

\*   This account was opened on or about December 11, 2017

TOTAL DISBURSEMENTS FROM MAIN Document Page 8 of 28 FOR CURRENT PERIOD

| Date mm/dd/yyyy | Check Number | Payee | Purpose | Amount |
|---|---|---|---|---|
| 12/4/2018 | 1010 | Wells Fargo Bank | Adequate Protection Payment | $6,683.28 |
| 12/31/2018 | | Chino Commercial Bank | Bank Fee | $50.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | TOTAL DISBURSEMENTS THIS PERIOD: | $6,733.28 |

Case 2:17-bk-15033-RK    Doc 120    Filed 01/15/19    Entered 01/15/19 15:08:47    Desc
CASH COLLATERAL Page 9 of 29
BANK RECONCILIATION***

Bank statement Date: **12/31/2018**  Balance on Statement: **$6,504.05**

Plus deposits in transit (a):

| Deposit Date | Deposit Amount |
|---|---|
| | |
| | |
| | |
| | |
| | |

TOTAL DEPOSITS IN TRANSIT                                        $0.00

Less Outstanding Checks (a):

| Check Number | Check Date | Check Amount |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

TOTAL OUTSTANDING CHECKS:                                        $0.00

Bank statement Adjustments:
Explanation of Adjustments-

ADJUSTED BANK BALANCE:                                        **$6,504.05**

\* It is acceptable to replace this form with a similar form
\*\* Please attach a detailed explanation of any bank statement adjustment
\*\*\*A true and correct copy of the Cash Collateral DIP account bank statement for the period from 12/1/2018
through 12/31/2018 is attached as **Exhibit C** hereto.

Case 2:17-bk-15033-RK    Doc 120    Filed 01/15/19    Entered 01/15/19 15:08:47    Desc
I. D Main Document SCHEDULE Page 10 of 16 CASH

ENDING BALANCES FOR THE PERIOD:  **12/1/2018 - 12/31/2018**
(Provide a copy of monthly account statements for each of the below)

|                                              |              |
|----------------------------------------------|--------------|
| General Account:                             | **$98,689.43** |
| Cash Collateral Account (Hayland Street):    | **$4,287.69** |
| Cash Collateral Account (Cold Plains Drive): | **$6,504.05** |

*Other Accounts: _____     _____

                 _____     _____

                 _____     _____

*Other Monies:   _____     _____

                          **Petty Cash (from below):    | 0.00 |

TOTAL CASH AVAILABLE:                                    **$109,481.17**

Petty Cash Transactions:

| Date | Purpose | Amount |
|------|---------|--------|
|      |         |        |
|      |         |        |
|      |         |        |
|      |         |        |
|      |         |        |
|      |         |        |
|      |         |        |
|      |         |        |
|      |         |        |
|      |         |        |
|      |         |        |
|      |         |        |
|      |         |        |
|      |         |        |
|      |         |        |

TOTAL PETTY CASH TRANSACTIONS:                           | 0.00 |

* Specify the Type of holding (e.g. CD, Savings Account, Investment Security), and the depository name, location & account#
** Attach Exhibit Itemizing all petty cash transactions

## II. STATUS OF PAYMENTS TO SECURED CREDITORS, LESSORS
### AND OTHER PARTIES TO EXECUTORY CONTRACTS

| Creditor, Lessor, Etc. | Frequency of Payments (Mo/Qtr) | Amount of Payment | Post-Petition payments not made (Number) | Total Due |
|---|---|---|---|---|
| Wells Fargo Bank | Monthly | $2,340.63 | 0 | $0.00 |
| Wells Fargo Bank | Monthly | $3,341.64 | 0 | $0.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | TOTAL DUE: | $0.00 |

## III. TAX LIABILITIES - N/A

FOR THE REPORTING PERIOD:

Gross Sales Subject to Sales Tax: _____
Total Wages Paid: _____

| | Total Post-Petition Amounts Owing | Amount Delinquent | Date Delinquent Amount Due |
|---|---|---|---|
| Federal Withholding | | | |
| State Withholding | | | |
| FICA- Employer's Share | | | |
| FICA- Employee's Share | | | |
| Federal Unemployment | | | |
| Sales and Use | | | |
| Real Property | | | |
| Other: | | | |
| TOTAL: | $0.00 | $0.00 | |

Case 2:17-bk-15033-RK    Doc 120    Filed 01/15/19    Entered 01/15/19 15:08:47    Desc
Main Document    Page 54 of 78

## IV. AGING OF ACCOUNTS PAYABLE AND RECEIVABLE - N/A

|  | *Accounts Payable Post-Petition | Accounts Receivable | |
|---|---|---|---|
|  |  | Pre-Petition | Post-Petition |
| 30 days or less |  |  |  |
| 31 - 60 days |  |  |  |
| TOTAL: | 0.00 | 0.00 | 0.00 |

## V. INSURANCE COVERAGE

|  | Name of Carrier | Amount of Coverage | Policy Expiration Date | Premium Paid Through (Date) |
|---|---|---|---|---|
| Commercial General Liability | Berkshire Hathaway | $3,000,000.00 | 7/21/2019 | 7/21/2019 |
| Commerical Auto | Berkshire Hathaway | $1,000,000.00 | 7/21/2019 | 7/21/2019 |
| Professional Liability | Berkshire Hathaway | $3,000,000.00 | 7/21/2019 | 7/21/2019 |
| Others: |  |  |  |  |

## VI. UNITED STATES TRUSTEE QUARTERLY FEES
### (TOTAL PAYMENTS)

| Quarterly Period Ending (Date) | Total Disbursements | Quarterly Fees | Date Paid | Amount Paid | Quarterly Fees Still Owing |
|---|---|---|---|---|---|
| 30-Jun-2017 | $1,188.80 | $325.00 | 17-Jul-2017 | $325.00 | $0.00 |
| 30-Sep-2017 | $625.00 | $325.00 | 12-Oct-2017 | $325.00 | $0.00 |
| 31-Dec-2017 | $17,791.54 | $650.00 | 6-Feb-2018 | $650.00 | $0.00 |
| 31-Mar-2018 | $26,145.44 | $650.00 | 30-Apr-2018 | $650.00 | $0.00 |
| 30-Jun-2018 | $12,464.54 | $325.00 | 12-Jul-2018 | $325.00 | $0.00 |
| 30-Sep-2018 | $23,504.08 | $650.00 | 8-Oct-2018 | $650.00 | $0.00 |
| 31-Dec-2018 | $14,263.38 | $325.00 |  |  | $325.00 |
|  |  |  |  |  | $0.00 |
|  |  |  |  |  | $0.00 |
|  |  |  |  |  | $0.00 |
|  |  |  |  |  | $0.00 |
|  |  |  |  |  | $0.00 |
|  |  |  |  |  | $0.00 |
|  |  |  |  |  | $0.00 |
|  |  |  |  |  | $0.00 |
|  |  |  |  |  | $0.00 |
|  |  |  |  |  | $0.00 |
|  |  |  |  |  | $0.00 |
|  |  |  |  |  | $0.00 |
|  |  |  |  |  | $0.00 |
|  |  |  |  |  | $0.00 |
|  |  |  |  |  | $0.00 |
|  | $3,250.00 |  |  | $2,925.00 | $325.00 |

* Post-Petition Accounts Payable SHOULD NOT include professionals' fees and expenses which have been incurred but not yet awarded by the court. Post-Petition Accounts Payable SHOULD include professionals' fees and expenses authorized by Court Order but which remain unpaid as of the close of the period report

Case 2:17-bk-15033-RK   Doc 120   Filed 01/15/19   Entered 01/15/19 15:08:47   Desc
Main Document      Page 13 of 29

## VII SCHEDULE OF COMPENSATION PAID TO INSIDERS - N/A

| Name of Insider | Date of Order Authorizing Compensation | *Authorized Gross Compensation | Gross Compensation Paid During the Month |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

## VIII.  SCHEDULE OF OTHER AMOUNTS PAID TO INSIDERS - N/A

| Name of Insider | Date of Order Authorizing Compensation | Description | Amount Paid During the Month |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

* Please indicate how compensation was identified in the order (e.g. $1,000/week, $2,500/month)

Case 2:17-bk-15033-RK   Doc 120   Filed 01/15/19   Entered 01/15/19 15:08:47   Desc

IX. PROFIT AND LOSS STATEMENT 29N/A
(ACCRUAL BASIS ONLY)

| | Current Month | Cumulative Post-Petition |
|---|---|---|
| **Sales/Revenue:** | | |
| Gross Sales/Revenue | | |
| Less: Returns/Discounts | | |
| Net Sales/Revenue | $0.00 | $0.00 |
| | | |
| **Cost of Goods Sold:** | | |
| Beginning Inventory at cost | | |
| Purchases | | |
| Less: Ending Inventory at cost | | |
| Cost of Goods Sold (COGS) | $0.00 | $0.00 |
| | | |
| **Gross Profit** | $0.00 | $0.00 |
| | | |
| Other Operating Income (Itemize) | | |
| | | |
| **Operating Expenses:** | | |
| Payroll - Insiders | | |
| Payroll - Other Employees | | |
| Payroll Taxes | | |
| Other Taxes (Itemize) | | |
| Depreciation and Amortization | | |
| Rent Expense - Real Property | | |
| Lease Expense - Personal Property | | |
| Insurance | | |
| Real Property Taxes | | |
| Telephone and Utilities | | |
| Repairs and Maintenance | | |
| Travel and Entertainment (Itemize) | | |
| Miscellaneous Operating Expenses (Itemize) | | |
| DIP Check Order | | |
| Total Operating Expenses | | |
| | | |
| Net Gain/(Loss) from Operations | $0.00 | $0.00 |
| | | |
| **Non-Operating Income:** | | |
| Interest Income | | |
| Net Gain on Sale of Assets (Itemize) | | |
| Other (Itemize) | | |
| Total Non-Operating income | $0.00 | $0.00 |
| | | |
| **Non-Operating Expenses:** | | |
| Interest Expense | | |
| Legal and Professional (Itemize) | | |
| Other (Itemize) | | |
| Total Non-Operating Expenses | $0.00 | $0.00 |
| | | |
| **NET INCOME/(LOSS)** | $0.00 | $0.00 |

(Attach exhibit listing all itemizations required above)

Case 2:17-bk-15033-RK    Doc 120    Filed 01/15/19    Entered 01/15/19 15:08:47    Desc
Main Document    Page 15 of 29

BALANCE SHEET
(ACCRUAL BASIS ONLY)

|  | Current Month End |
|---|---|
| **ASSETS** | |
| Current Assets: | |
| Unrestricted Cash | |
| Restricted Cash | |
| Accounts Receivable | |
| Inventory | |
| Notes Receivable | |
| Prepaid Expenses | |
| Other (Itemize) | |
| Total Current Assets | 0.00 |
| | |
| Property, Plant, and Equipment | |
| Accumulated Depreciation/Depletion | |
| Net Property, Plant, and Equipment | 0.00 |
| | |
| Other Assets (Net of Amortization): | |
| Due from Insiders | |
| Other (Itemize) | |
| Total Other Assets | 0.00 |
| **TOTAL ASSETS** | 0.00 |
| | |
| **LIABILITIES** | |
| Post-petition Liabilities: | |
| Accounts Payable | |
| Taxes Payable | |
| Notes Payable | |
| Professional fees | |
| Secured Debt | |
| Other (Itemize) | |
| Total Post-petition Liabilities | 0.00 |
| | |
| Pre-petition Liabilities: | |
| Secured Liabilities | |
| Priority Liabilities | |
| Unsecured Liabilities | |
| Other (Itemize) | |
| Total Pre-petition Liabilities | 0.00 |
| **TOTAL LIABILITIES** | 0.00 |
| | |
| **EQUITY:** | |
| Pre-petition Owners' Equity | |
| Post-petition Profit/(Loss) | |
| Direct Charges to Equity | |
| **TOTAL EQUITY** | 0.00 |
| **TOTAL LIABILITIES & EQUITY** | 0.00 |

Case 2:17-bk-15033-RK    Doc 120    Filed 01/15/19    Entered 01/15/19 15:08:47    Desc
Main Document        Page 16 of 29

## XI. QUESTIONNAIRE

|     |     |     | No | Yes |
| --- | --- | --- | --- | --- |

1. Has the debtor-in-possession made any payments on its pre-petition unsecured debt, except as have been authorized by the court? If "Yes", explain below:

                              No    X    Yes ____

_____

2. Has the debtor-in-possession during this reporting period provided compensation or remuneration to any officers, directors, principals, or other insiders without appropriate authorization? If "Yes", explain below:

                              No    X    Yes ____

_____

3. State what progress was made during the reporting period toward filing a plan of reorganization
   Debtor prepared and filed its November 2018 Monthly Operating Report.

_____

4. Describe potential future developments which may have a significant impact on the case:
   Unknown

_____

5. Attach copies of all Orders granting relief from the automatic stay that were entered during the reporting period.

6. Did you receive any exempt income this month, which is not set forth in the operating report? If "Yes", please set forth the amounts and sources of the income below.

                              No    X    Yes ____

_____

I,  Susana Tubianosa, Manager
    declare under penalty of perjury that I have fully read and understood the foregoing debtor-in-possession operating report and that the information contained herein is true and complete to the best of my knowledge.

1/15/19
Date

Principal for debtor-in-possession

EXHIBIT A

**Chino Commercial Bank**

**14245 Pipeline Avenue**
**Chino, CA 91710**

RETURN SERVICE REQUESTED

SHAPPHIRE RESOURCES LLC
GENERAL DEBTOR IN POSSESSION ACCT
CASE NO. 2:17-BK-15033-RK
1982 CAMWOOD AVE
ROWLAND HEIGHTS CA 91748-4044

## *Statement Ending 12/31/2018*

*Page 1 of 2*

**Managing Your Accounts**

| | | |
|---|---|---|
| Mailing Address | 14245 Pipeline Avenue | Chino, CA 91710 |
| Phone Number | (909) 393-8880 | Fax (909) 465-1279 |
| Online Access | chinocommercialbank.com |

## Summary of Accounts

| Account Type | Account Number | Ending Balance |
|---|---|---|
| Debtor In Possession | xxxxxxxxxxxxx6920 | $98,689.43 |

## Debtor In Possession-xxxxxxxxxxxxx6920

### Account Summary

| Date | Description | Amount | Description | Amount |
|---|---|---|---|---|
| 12/01/2018 | Beginning Balance | $98,739.43 | Minimum Balance | $98,739.43 |
| | 0 Credit(s) This Period | $0.00 | Average Collected Balance | $0.00 |
| | 1 Debit(s) This Period | $50.00 | Average Balance | $0.00 |
| 12/31/2018 | Ending Balance | $98,689.43 | | |
| | Service Charges | $50.00 | | |

### Other Debits

| Date | Description | Amount |
|---|---|---|
| 12/31/2018 | Service Charge | $50.00 |

### Daily Balances

| Date | Amount | Date | Amount |
|---|---|---|---|
| 12/01/2018 | $98,739.43 | 12/31/2018 | $98,689.43 |

### Service Charge Summary

| Description | Amount |
|---|---|
| 12/31/2018 Maintenance Fee  (Service Charge Balance: $98739.43) | $50.00 |
| Total Service Charge | $50.00 |

*Working For Your Business...*

**Member FDIC**

Statement Ending 12/31/2018          Page 2 of 2

| CHECKS OUTSTANDING | | | | | | CHECKBOOK RECONCILIATION | | |
|---|---|---|---|---|---|---|---|---|
| DATE OR # | AMOUNT | DATE OR # | AMOUNT | DATE OR # | AMOUNT | | | |
| | | | | | | ENTER | BALANCE THIS STATEMENT | $ |
| | | | | | | ADD | RECENT DEPOSITS (NOT CREDITED ON THIS STATEMENT) | |
| | | | | | | | | $ |
| | | | | | | SUBTOTAL | | |
| | | | | | | SUBTRACT | | |
| | | | | TOTAL $ | | | TOTAL CHECKS OUTSTANDING | $ |

BALANCE should agree with your checkbook balance after deducting charges and adding credits not shown in your checkbook but included on this statement as follows:
Interest-ADD  Overdraft-DEDUCT  Automatic Payment-DEDUCT  Automatic Advance-ADD  Service Charge-DEDUCT

BALANCE  $

PLEASE REPORT ANY ERRORS OR OMISSIONS WITHIN 30 DAYS, OTHERWISE STATEMENT WILL BE CONSIDERED CORRECT AND CHECKS GENUINE. ALL DEPOSITS AND CREDITS ARE SUBJECT TO FINAL PAYMENT.

## METHOD USED TO DETERMINE THE BALANCE ON WHICH THE FINANCE CHARGE WILL BE COMPUTED

A daily finance charge will be imposed on all credit advances made under your Overdraft Protection Account imposed from the date of each credit advance based on the "daily balance" method. To get the daily balance we take the beginning balance of the Overdraft Protection Account each day, add any new advances and subtract any payments or credits and any unpaid finance charges. This gives us the "daily balance."

Periodic finance charges for credit advances under your Overdraft Protection Account will begin to accrue on the date credit advances are posted to your Overdraft Protection Account. There is no "free ride period" which would allow you to avoid a finance charge on your Overdraft Protection Account advances.

Any finance charge is determined by applying the "Periodic Rate" to the balance described above. To obtain the Periodic Rate, we divide the interest rate by the number of days in a year (daily). The periodic finance charges for each day in the statement cycle are added together for the monthly statement charge.

## PAYMENT INSTRUCTIONS

Payments on your bill must be sent with your payment coupon to: Chino Commercial Bank, 14245 Pipeline Avenue, Chino, CA  91710-5639. Delivering your payment without the payment coupon, or at another address may result in delays in crediting. Payments received after 3:00 p.m. will be treated as received on the next business day. However, if you have a dispute and want to communicate with us regarding the dispute, send your communications and any payment to: Consumer Complaint Department, Chino Commercial Bank, 14245 Pipeline Avenue, Chino, CA  91710-5639.

## BILLING RIGHTS SUMMARY

### In Case of Errors or Questions About Your Account Statement

If you think your statement is wrong, or if you need more information about a transaction on your statement, write us on a separate sheet at the address shown on the face of this statement as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. You may telephone us but doing so may not preserve your rights. In your letter, give us the following information: Your name and account number, the dollar amount of the suspected error, describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about. You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your statement that are not in question. While we investigate your questions, we cannot report you as delinquent or take action to collect the amount you question.

## IN CASE OF ERRORS OR QUESTIONS REGARDING ELECTRONIC TRANSFERS ON CHECKING OR SAVINGS ACCOUNTS

Contact us at the telephone number or address shown on the front of this statement as soon as you can. If you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. Include your name and account number, describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information, tell us the dollar amount of the suspected error. We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

To report lost/stolen Master Money Debit Cards, call 1-800-472-3272.

## DORMANT ACCOUNTS

Checking accounts including Money Market accounts and Now accounts, Savings Accounts, IRA accounts, Matured Time Deposit accounts, and Safe Deposit Boxes that have had no activity for twelve (12) months, unless the depositor has been contacted, will be classified as Dormant Accounts. By law, these accounts will be transferred to the State of California, Controller's Office after three (3) years of inactivity if they are not reactivated or claimed by

the depositor. To reclaim funds transferred to the State, depositors, or their heirs, must contact the funds from and present proof of ownership to: State of California, Controller's Office, Division of Unclaimed Property, P.O. Box 942850, Sacramento, CA 94250-5873.

## FUNDS AVAILABILITY POLICY

A hold for uncollected funds may be placed on funds deposited by check or similar instruments. This could delay your ability to withdraw such funds. The delay, if any, would not exceed the period of time permitted by law. For a complete copy of Chino Commercial Bank

N.A. Funds Availability Policy, please contact our office at (909) 393-8880 or write to us at Chino Commercial Bank, Attn: Customer Service, 14245 Pipeline Avenue, Chino, CA  91710-5639.

EXHIBIT B

**Chino
Commercial
Bank** SA

14245 Pipeline Avenue
Chino, CA 91710

RETURN SERVICE REQUESTED

SHAPPHIRE RESOURCES LLC
CASH COLLATERAL DEBTOR IN POSSESSION ACC
CASE NO. 2:17-BK-15033-RK
1982 CAMWOOD AVE
ROWLAND HEIGHTS CA 91748-4044

### *Statement Ending 12/31/2018*

*Page 1 of 4*

**Managing Your Accounts**

Mailing Address    14245 Pipeline Avenue
                   Chino, CA 91710
Phone Number       909-393-8880
                   Fax# 909-465-1279
Online Access      chinocommercialbank.com

## Summary of Accounts

| Account Type | Account Number | Ending Balance |
|---|---|---|
| Debtor In Possession | xxxxxxxxxxxxx6938 | $4,287.69 |

## Debtor In Possession-xxxxxxxxxxxxxx6938

### Account Summary

| Date | Description | Amount | Description | Amount |
|---|---|---|---|---|
| 12/01/2018 | Beginning Balance | $6,618.99 | Minimum Balance | $4,337.69 |
| | 1 Credit(s) This Period | $2,500.00 | Average Collected Balance | $0.00 |
| | 3 Debit(s) This Period | $4,831.30 | Average Balance | $0.00 |
| 12/31/2018 | Ending Balance | $4,287.69 | | |
| | Service Charges | $50.00 | | |

### Deposits

| Date | Description | Amount |
|---|---|---|
| 12/06/2018 | Deposit | $2,500.00 |

### Electronic Debits

| Date | Description | Amount |
|---|---|---|
| 12/21/2018 | ACH Payment | $100.04 |
| | SAFEGUARD CHK SUPPLY | |

### Other Debits

| Date | Description | Amount |
|---|---|---|
| 12/31/2018 | Service Charge | $50.00 |

### Checks Cleared

| Check Nbr | Date | Amount |
|---|---|---|
| 1020 | 12/12/2018 | $4,681.26 |

* Indicates skipped check number

### Daily Balances

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 12/01/2018 | $6,618.99 | 12/12/2018 | $4,437.73 | 12/31/2018 | $4,287.69 |
| 12/06/2018 | $9,118.99 | 12/21/2018 | $4,337.69 | | |

*Working For Your Business...*

**FDIC** Member    [EQUAL HOUSING LENDER logo]

Statement Ending 12/31/2018                                    Page 2 of 4

| CHECKS OUTSTANDING | | | | | | CHECKBOOK RECONCILIATION | | |
|---|---|---|---|---|---|---|---|---|
| DATE OR # | AMOUNT | DATE OR # | AMOUNT | DATE OR # | AMOUNT | ENTER | BALANCE THIS STATEMENT | $ |
| | | | | | | ADD | RECENT DEPOSITS (NOT CREDITED ON THIS STATEMENT) | |
| | | | | | | | | $ |
| | | | | | | | SUBTOTAL | |
| | | | | TOTAL | $ | SUBTRACT | TOTAL CHECKS OUTSTANDING | $ |

BALANCE should agree with your checkbook balance after deducting charges and adding credits not shown in your checkbook but not included on this statement as follows:
Interest-ADD  Overdraft-DEDUCT  Automatic Payment-DEDUCT  Automatic Advance-ADD  Service Charge-DEDUCT

BALANCE  $

PLEASE REPORT ANY ERRORS OR OMISSIONS WITHIN 30 DAYS. OTHERWISE STATEMENT WILL BE CONSIDERED CORRECT AND CHECKS GENUINE. ALL DEPOSITS AND CREDITS ARE SUBJECT TO FINAL PAYMENT.

## METHOD USED TO DETERMINE THE BALANCE ON WHICH THE FINANCE CHARGE WILL BE COMPUTED

A daily finance charge will be imposed on all credit advances made under your Overdraft Protection Account imposed from the date of each credit advance based on the "daily balance" method. To get the daily balance we take the beginning balance of the Overdraft Protection Account each day, add any new advances and subtract any payments or credits and any unpaid finance charges. This gives us the "daily balance."

Periodic finance charges for credit advances under your Overdraft Protection Account will begin to accrue on the date credit advances are posted to your Overdraft Protection Account. There is no "free ride period" which would allow you to avoid a finance charge on your Overdraft Protection Account advances.

Any finance charge is determined by applying the "Periodic Rate" to the balance described above. To obtain the Periodic Rate, we divide the interest rate by the number of days in a year (daily). The periodic finance charges for each day in the statement cycle are added together for the monthly statement charge.

## PAYMENT INSTRUCTIONS

Payments on your bill must be sent with your payment coupon to: Chino Commercial Bank, 14245 Pipeline Avenue, Chino, CA 91710-5638. Delivering your payment without the payment coupon, or at another address may result in delays in crediting. Payments received after 5:00 p.m. will be treated as received on the next business day. However, if you have a dispute and want to communicate with us regarding the dispute, send your communications and any payment to: Consumer Complaint Department, Chino Commercial Bank, 14245 Pipeline Avenue, Chino, CA 91710-5639.

## BILLING RIGHTS SUMMARY

### In Case of Errors or Questions About Your Account Statement
If you think your statement is wrong, or if you need more information about a transaction on your statement, write us on a separate sheet at the address shown on the face of this statement as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. You may telephone us but doing so may not preserve your rights. In your letter, give us the following information: Your name and account number, the dollar amount of the suspected error, describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about. You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your statement that are not in question. While we investigate your questions, we cannot report you as delinquent or take action to collect the amount you question.

## IN CASE OF ERRORS OR QUESTIONS REGARDING ELECTRONIC TRANSFERS ON CHECKING OR SAVINGS ACCOUNTS

Contact us at the telephone number or address shown on the front of this statement as soon as you can. If you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. Include your name and account number, describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information, tell us the dollar amount of the suspected error. We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

To report lost/stolen Master Money Debit Cards, call 1-800-472-3272.

## DORMANT ACCOUNTS

Checking accounts including Money Market accounts and Now accounts, Savings Accounts, IRA accounts, Matured Time Deposit accounts, and Safe Deposit Boxes that have had no activity for twelve (12) months, unless the depositor has been contacted, will be classified as Dormant Accounts. By law, these accounts will be transferred to the State of California, Controller's Office after three (3) years of inactivity if they are not reactivated or claimed by the depositor. To reclaim funds transferred to the State, depositors, or their heirs, must request the funds from and present proof of ownership to: State of California, Controller's Office, Division of Unclaimed Property. P.O. Box 942850, Sacramento, CA 94250-5873.

## FUNDS AVAILABILITY POLICY

A hold for uncollected funds may be placed on funds deposited by check or similar instruments. This could delay your ability to withdraw such funds. The delay, if any, would not exceed the period of time permitted by law. For a complete copy of Chino Commercial Bank N A. Funds Availability Policy, please contact our office at (909) 393-8880 or write to us at Chino Commercial Bank, Attn: Customer Service, 14245 Pipeline Avenue, Chino, CA 91710-5639.

 Chino
Commercial
Bank ℠

## *Statement Ending 12/31/2018*

*Page 3 of 4*

## Debtor In Possession-xxxxxxxxxxxxx6938 (continued)

Service Charge Summary

| Description | Amount |
|---|---|
| 12/31/2018 Maintenance Fee  (Service Charge Balance: $4337.69) | $50.00 |
| Total Service Charge | $50.00 |

Statement Ending 12/31/2018                                   Page 4 of 4



| ISN: | | Date: 12/06/2018 |
| | | Start Time: 11:50:38 AM |
| 122243062 | | Amount: 2,500.00 |
| Branch: 1 | | Account Number: ●●●938 |
| Teller: 1 | | DDA Credit |
| | | Deposit |
| Comments: | | |
| RT: 122243062 | | TC: 151 |

#1020          12/12/18          $4,681.26          #0          12/06/18          $2,500.00

EXHIBIT C

**Chino Commercial Bank** BA

14245 Pipeline Avenue
Chino, CA 91710

**RETURN SERVICE REQUESTED**

SHAPPHIRE RESOURCES LLC
CASH COLLATERAL COLD PLAINS
DIP CASE NO. 2:17-BK-15033-RK
1982 CAMWOOD AVE
ROWLAND HEIGHTS CA 91748-4044

## *Statement Ending 12/31/2018*

*Page 1 of 4*

### *Managing Your Accounts*

| | | |
|---|---|---|
| Mailing Address | 14245 Pipeline Avenue, Chino, CA 91710 | |
| Phone Number | 909-393-8880   Fax 909-465-2274 | |
| Online Access | chinocommercialbank.com | |

### Summary of Accounts

| Account Type | Account Number | Ending Balance |
|---|---|---|
| Debtor In Possession | xxxxxxxxxxxx7316 | $6,504.05 |

## Debtor In Possession-xxxxxxxxxxxxx7316

### Account Summary

| Date | Description | Amount | Description | Amount |
|---|---|---|---|---|
| 12/01/2018 | Beginning Balance | $9,737.33 | Minimum Balance | $3,054.05 |
| | 1 Credit(s) This Period | $3,500.00 | Average Collected Balance | $0.00 |
| | 2 Debit(s) This Period | $8,733.28 | Average Balance | $0.00 |
| 12/31/2018 | Ending Balance | $6,504.05 | | |
| | Service Charges | $50.00 | | |

### Deposits

| Date | Description | Amount |
|---|---|---|
| 12/06/2018 | Deposit | $3,500.00 |

### Other Debits

| Date | Description | Amount |
|---|---|---|
| 12/31/2018 | Service Charge | $50.00 |

### Checks Cleared

| Check Nbr | Date | Amount |
|---|---|---|
| 1010 | 12/04/2018 | $6,683.28 |

* Indicates skipped check number

### Daily Balances

| Date | Amount | Date | Amount |
|---|---|---|---|
| 12/01/2018 | $9,737.33 | 12/06/2018 | $6,554.05 |
| 12/04/2018 | $3,054.05 | 12/31/2018 | $6,504.05 |

### Service Charge Summary

| Description | Amount |
|---|---|
| 12/31/2018 Maintenance Fee  (Service Charge Balance: $6554.05) | $50.00 |
| Total Service Charge | $50.00 |

*Working For Your Business...*

Member FDIC

| CHECKS OUTSTANDING | | | | | | CHECKBOOK RECONCILIATION | | |
|---|---|---|---|---|---|---|---|---|
| DATE OR # | AMOUNT | DATE OR # | AMOUNT | DATE OR # | AMOUNT | ENTER | BALANCE THIS STATEMENT | $ |
| | | | | | | ADD | RECENT DEPOSITS (NOT CREDITED ON THIS STATEMENT) | $ |
| | | | | | | | SUBTOTAL | |
| | | | | | | SUBTRACT | TOTAL CHECKS OUTSTANDING | $ |
| | | | | TOTAL | $ | | BALANCE | $ |

BALANCE should agree with your checkbook balance after deducting charges and adding credits not shown in your checkbook but included on this statement as follows:
Interest-ADD  Overdraft-DEDUCT  Automatic Payment-DEDUCT  Automatic Advance-ADD  Service Charge-DEDUCT

PLEASE REPORT ANY ERRORS OR OMISSIONS WITHIN 30 DAYS, OTHERWISE STATEMENT WILL BE CONSIDERED CORRECT AND CHECKS GENUINE. ALL DEPOSITS AND CREDITS ARE SUBJECT TO FINAL PAYMENT.

### METHOD USED TO DETERMINE THE BALANCE ON WHICH THE FINANCE CHARGE WILL BE COMPUTED

A daily finance charge will be imposed on all credit advances made under your Overdraft Protection Account imposed from the date of each credit advance based on the "daily balance" method. To get the daily balance we take the beginning balance of the Overdraft Protection Account each day, add any new advances and subtract any payments or credits and any unpaid finance charges. This gives us the "daily balance."

Periodic finance charges for credit advances under your Overdraft Protection Account will begin to accrue on the date credit advances are posted to your Overdraft Protection Account. There is no "free ride period" which would allow you to avoid a finance charge on your Overdraft Protection Account advances.

Any finance charge is determined by applying the "Periodic Rate" to the balance described above. To obtain the Periodic Rate, we divide the interest rate by the number of days in a year (daily). The periodic finance charges for each day in the statement cycle are added together for the monthly statement charge.

### PAYMENT INSTRUCTIONS

Payments on your bill must be sent with your payment coupon to: Chino Commercial Bank, 14245 Pipeline Avenue, Chino, CA  91710-5639. Delivering your payment without the payment coupon, or at another address may result in delays in crediting. Payments received after 3:00 p.m. will be treated as received on the next business day. However, if you have a dispute and want to communicate with us regarding the dispute, send your communications and any payment to: Consumer Complaint Department, Chino Commercial Bank, 14245 Pipeline Avenue, Chino, CA 91710-5639.

### BILLING RIGHTS SUMMARY

#### In Case of Errors or Questions About Your Account Statement

If you think your statement is wrong, or if you need more information about a transaction on your statement, write us on a separate sheet at the address shown on the face of this statement as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. You may telephone us but doing so may not preserve your rights. In your letter, give us the following information: Your name and account number, the dollar amount of the suspected error, describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about. You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your statement that are not in question. While we investigate your questions, we cannot report you as delinquent or take action to collect the amount you question.

### IN CASE OF ERRORS OR QUESTIONS REGARDING ELECTRONIC TRANSFERS ON CHECKING OR SAVINGS ACCOUNTS

Contact us at the telephone number or address shown on the front of this statement as soon as you can. If you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. You must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. Include your name and account number, describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information, tell us the dollar amount of the suspected error. We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

To report lost/stolen Master Money Debit Cards, call 1-800-472-3272.

### DORMANT ACCOUNTS

Checking accounts including Money Market accounts and Now accounts, Savings Accounts, IRA accounts, Matured Time Deposit accounts, and Safe Deposit Boxes that have had no activity for twelve (12) months, unless the depositor has been contacted, will be classified as Dormant Accounts. By law, these accounts will be transferred to the State of California, Controller's Office after three (3) years of inactivity if they are not reactivated or claimed by the depositors. To reclaim funds transferred to the State, depositors, or their heirs, must request the funds from and present proof of ownership to: State of California, Controller's Office, Division of Unclaimed Property P.O. Box 942850, Sacramento, CA  94250-5873.

### FUNDS AVAILABILITY POLICY

A hold for uncollected funds may be placed on funds deposited by check or similar instruments. This could delay your ability to withdraw such funds. The delay, if any, would not exceed the period of time permitted by law. For a complete copy of Chino Commercial Bank N.A. Funds Availability Policy, please contact our office at (909) 393-8880 or write to us at Chino Commercial Bank, Attn: Customer Service, 14245 Pipeline Avenue, Chino, CA  91710-5639.


Chino
Commercial
Bank

### _Statement Ending 12/31/2018_

Page 3 of 4



| | | |
|---|---|---|
| ISN: | Date: 12/06/2018 | |
| | Start Time: 11:52:15 AM | |
| 122243062 | Amount: 3,500.00 | |
| Branch: 1 | Account Number: ●●7316 | |
| Teller: 1 | DDA Credit | |
| | Deposit | |
| Comments: | | |
| RT: 122243062 | TC: 151 | |

#1010       12/04/18        $6,683.28          #0        12/06/18        $3,500.00

Statement Ending 12/31/2018                                    Page 4 of 4

THIS PAGE LEFT INTENTIONALLY BLANK

1

**EXHIBIT C - LEASES TO BE ASSUMED**

2

3   ALL LEASES WITH THE TENANT OF THE HAYLAND STREET PROPERTY AND THE
COLD PLAINS DRIVE PROPERTY THAT ARE UNEXPIRED
4                        AS OF THE EFFECTIVE DATE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT D – LIST OF ADMINISTRATIVE EXPENSE CLAIMS**

## UNCLASSIFIED CLAIMS: ADMINISTRATIVE CLAIMS

Amounts (Allowed + Estimated = Total Amount – Paid = Total Due)

| Name | Code § | Allowed to date | Estimated | Total Amount | Paid | Total Due |
|------|--------|-----------------|-----------|--------------|------|-----------|
| Aver Firm | 507(a) | -0- | 50,000.00 | 50,000.00 | -0- | 50,000.00 |
| OUST | 507(a) | -0- | 0.00 | 0.00 | -0- | 0.00 |
| Court Clerk | 507(a) | -0- | 0.00 | 0.00 | -0- | 0.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| TOTAL AMOUNTS | | | | | | $50,000.00 |

*ORIGINAL DISCLOSURE STATEMENT*

Page 41

EXHIBIT E - LIST OF GENERAL UNSECURED CLAIMS

## CLASSIFIED CLAIMS: UNSECURED CLAIMS

| Class | Name | Insider | Impaired | SCHEDULED CLAIMS Amount | D/C/U* | FILED CLAIMS Amount | Objection |
|---|---|---|---|---|---|---|---|
| 5 | Daniel Gonzalez | N | Y | $15,000.00 | N | N/A | N |
| | Francisca Flor Jurado | N | Y | $12,000.00 | N | N/A | N |
| | HGI Financial Services | N | Y | $12,500.00 | N | N/A | N |
| | Internal Revenue Service | N | Y | N/A | N | $300.00 | N |
| | Ricardo Jurado | N | Y | $60,000.00 | N | N/A | N |
| | United Care Home | N | Y | $30,707.81 | N | N/A | N |
| | Wells Fargo Bank, N.A. (Unsecured Portion) | N | Y | N/A | N | $287,719.89 | N |
| | Wells Fargo Bank, N.A. (Unsecured Portion) | N | Y | N/A | N | $486,182.35 | N |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | **TOTAL AMOUNT FOR CLASS** | | | $130,207.81 | | $774,202.24 | |

* Disputed/contingent/unliquidated

*ORIGINAL DISCLOSURE STATEMENT*

Page 42

Law Offices
of Raymond
H. Aver, APC

EXHIBIT F - LIST OF EQUITY INTERESTS

## CLASSIFIED INTEREST: EQUITY SECURITY INTEREST HOLDERS

| Class | Name | Insider | Impaired | SCHEDULED INTERESTS | | FILED INTERESTS | |
|---|---|---|---|---|---|---|---|
| | | | | Percentage | D/C/U* | Percentage | Objection |
| 6 | Susana Tubianosa | Y | N | 100% | n/a | n/a | n/a |

* Disputed/contingent/unliquidated

*ORIGINAL DISCLOSURE STATEMENT*

Page 43

Law Offices
of Raymond
H. Aver, APC

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10801 National Boulevard, Suite 100, Los Angeles, California 90064.

The foregoing document described **"ORIGINAL DISCLOSURE STATEMENT DESCRIBING 'DEBTOR'S CHAPTER 11 PLAN'"** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **February 4, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

| | |
|---|---|
| Raymond H. Aver | ray@averlaw.com, averlawfirm@gmail.com;ani@averlaw.com;katya@averlaw.com |
| Oscar Estrada | oestrada@ttc.lacounty.gov |
| Todd S Garan | ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com |
| Ashish R Rawat | ashish.rawat@americaninfosource.com |
| Edward A Treder | cdcaecf@bdfgroup.com |
| United States Trustee (LA) | ustpregion16.la.ecf@usdoj.gov |
| Diane Weifenbach | diane@attylsi.com, bankruptcy1@attylsi.com |
| Hatty K Yip | hatty.yip@usdoj.gov |

_____   Service information continued on attached page.

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **February 4, 2019**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

___X___   Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 4, 2019**, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*
Honorable Robert N. Kwan
Bin outside of Suite 1682

_____   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

February 4, 2019          Kateryna Bilenka
     Date                          Name                                 Signature

Law Offices
of Raymond
H. Aver, APC

1

## SERVICE LIST

2

3 VIA FIRST CLASS MAIL

4 Debtor
Shapphire Resources, LLC
5 1982 Camwood Avenue
Rowland Heights, California 91748

6
Securities Exchange Commission

7
U.S. Securities and Exchange Commission
8 Attn: Bankruptcy Counsel
444 South Flower Street, Suite 900
9 Los Angeles, California 90071-9591

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28